UNITED STATES of America, et al., Plaintiffs,

v.

HOOKER CHEMICALS & PLASTICS CORPORATION, et al., Defendants.

No. CIV–79–988C.

United States District Court,
W.D. New York.

Feb. 10, 1984.

U.S. Dept. of Justice, Environmental Enforcement Section, Land and Natural Resources Div., Washington, D.C. (Michael Elder, Washington, D.C., of counsel), for plaintiff U.S.

Robert Abrams, Atty. Gen., State of N.Y. New York City (Marcia J. Cleveland, Asst. State Atty. Gen., New York City, of counsel), for plaintiff State of N.Y.

Wald, Harkrader & Ross, Washington, D.C. (Thomas H. Truitt, Washington, D.C., of counsel), for defendants Occidental.

Gellman, Brydges, Schroff & Schweitzer, Niagara Falls, N.Y. (Joel Schweitzer, Niagara Falls, N.Y., of counsel), for defendant City of Niagara Falls.

Terris & Sunderland, Washington, D.C. (Philip G. Sunderland, Washington, D.C., of counsel), for applicants for intervention Province of Ontario and Minister of the Environment of the Province of Ontario.

CURTIN, Chief Judge.

I.

Pending before the court is the application of the Province of Ontario and the Minister of the Environment [Ontario][1] to intervene in an environmental lawsuit commenced in December, 1979, against Hooker Chemical and Plastics Corporation [Occidental].[2] The present action concerns Occidental's dumping of thousands of tons of chemicals at its S-Area Landfill in Niagara Falls, New York, for a period of approximately 28 years, ending in 1975.

The S-Area Landfill is situated on about eight acres of land and is bordered on the south by the Robert Moses Parkway, beyond which flows the Niagara River. Immediately to the east of the S-Area Landfill is the Niagara Falls Drinking Water Treatment Plant. The S-Area is, in part, situated upon land which has been reclaimed from the Niagara River. Among the many concerns of the United States and New York State is the landfill's proximity to the water treatment plant. The endangerment of the water supplied to the people of Niagara Falls has also been a matter of great concern to the private citizens of that City and to the people of Western New York generally.

The case is presently in a settlement posture. Beginning in October, 1980, counsel embarked upon a series of negotiations aimed at arriving upon a satisfactory settlement of this case. After more than three years of discussion, counsel for all parties announced that they had agreed upon a settlement and proposed judgment. Approval by each of the parties was finalized when all of the necessary signatures were placed upon the agreement and when it was lodged with the court on January 10, 1984.

At this juncture, it is important to note that approval by the parties and the lodging of the agreement with the court do not signal the end to this matter. A settlement by the parties only means that they have arrived at a formula which resolves their differences to their mutual satisfaction. However, the agreement reached by the parties will be subject to extensive and intensive public scrutiny. Specifically, there is a 30-day period after the lodging of the agreement, during which time interested persons may submit their comments and criticisms. The United States has agreed to extend this period for an additional 30 days. Following this, the court will conduct public hearings, during which witnesses will be called, examined, and cross-examined by the parties. The purpose of these

---

**1.** Also pending are the applications of four private groups. These groups are Niagara Environmental Action, the Ecumenical Task Force, Pollution Probe Foundation, and Operation Clean Niagara. This order addresses only the application of the Province of Ontario.

**2.** Hooker Chemical and Plastics Corporation is now known as Occidental Chemical Corporation. The other defendants are: Hooker Chemical Corporation, now known as Occidental Chemical Holding Corporation; Occidental Petroleum Investment Co., and Occidental Petroleum Corporation. These defendants shall be collectively referred to as "Occidental." The City of Niagara Falls is also a defendant.

hearings is to develop a complete and accurate record. Only after the development of such a record will the court decide whether or not the agreement ought to be approved. It is only upon court approval that the settlement and proposed judgment can become effective as the judgment of this court. *See United States v. Hooker Chemical and Plastics Corp.*, 540 F.Supp. 1067 (W.D.N.Y.1982) (Hyde Park Landfill).

Ontario contends that it is entitled to intervene in this action as a matter of right pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure. In the alternative, Ontario seeks permissive intervention pursuant to Rule 24(b). The complaint in intervention seeks relief under four theories, three of which concern the application of federal environmental statutes,[3] and a fourth which is a common law nuisance claim.

For the reasons stated below and to the extent indicated herein, the motion of the Province of Ontario and the Minister of the Environment to intervene in this action as a matter of right shall be granted. Fed.R. Civ.P. 24(a)(2).

## II.

Intervention as a matter of right pursuant to Rule 24(a)(2) is appropriate when an applicant satisfies four requirements. These are: 1) an interest in the subject matter of the action; 2) disposition of the action might, as a practical matter, impair its interest; 3) the representation of its interest might be inadequate; and 4) the application is timely. *Restor-A-Dent Dental Laboratories, Inc. v. Certified Alloy Products, Inc.*, 725 F.2d 871 at 873–874 (2d Cir.1984); *LaRouche v. Federal Bureau of Investigation*, 677 F.2d 256, 257 (2d Cir.

1982); *United States Postal Service v. Brennan*, 579 F.2d 188, 191 (2d Cir.1978).[4]

Only Occidental and Niagara Falls argue that the applicant lacks a sufficient interest in the subject matter of this case to qualify for intervention as of right. Occidental and Niagara Falls are also the only parties which argue that Ontario's motion is untimely and that the disposition of the case will not impair the interests of the Province. The State of New York does not oppose the motion. The United States does not oppose permissive intervention by Ontario but argues that intervention as of right is precluded because Ontario's interests are adequately represented by the United States and by New York State.

■■■ The most seriously disputed point concerning the pending intervention motion is the adequacy of the representation being supplied by the United States and New York State with respect to what Ontario says its interests are. The burden of showing that present representation may be inadequate rests with the applicant. *United States Postal Service v. Brennan, supra*, 579 F.2d at 191. In the usual case, the burden is "minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972). However, a different standard is often applied when a state is a party to an action and intervention is sought by its citizens or by a political subdivision of that state. In such circumstances, courts in some cases have invoked the *parens patriae* doctrine, under which there is a strong presumption that the state is adequately representing the interest of its citizens. A minimal showing of possible inadequate representation is not sufficient to overcome this presumption. *Environmental Defense Fund,*

---

**3.** The statutes invoked by Ontario are section 505 of the Clean Water Act (33 U.S.C. § 1365) and section 7002 of the Resource Conservation and Recovery Act (42 U.S.C. § 6972). The United States brought the original action under the emergency provisions of CWA (33 U.S.C. § 1364), RCRA (42 U.S.C. § 6973), and the Safe Drinking Water Act (42 U.S.C. § 300i).

**4.** Rule 24(a)(2) provides as follows:

Upon timely application anyone shall be permitted to intervene in an action ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that *the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.*

*Inc. v. Higginson,* 631 F.2d 738, 740 (D.C. Cir.1979); 3B Moore's Federal Practice, ¶ 24.07[4] at 24–72. On the contrary, when the *parens patriae* doctrine is invoked, a strong showing of inadequacy is required, and intervention as of right is far less likely. 7A Wright and Miller, *Federal Practice and Procedure,* § 1909 at 530–31 (1972).

■ A similar standard for measuring the adequacy of representation is often applied in public interest litigation in which the United States is a party. This is particularly true in antitrust cases. *See, e.g., United States v. Hartford Empire Co.,* 573 F.2d 1, 2 (6th Cir.1978); *United States v. Associated Milk Producers, Inc.,* 534 F.2d 113, 117 (8th Cir.1976). However, in the instant case, the presence of the United States and New York State does not signal the application of a heightened standard for analyzing the adequacy of the representation being supplied by these parties. Neither of these two governmental parties. has any duty to represent the citizens and residents of Ontario. Inasmuch as it is a legal obligation on the part of governments that is the basis of the strong presumption that their representation is adequate, there is no basis for applying the heightened standard when no such obligation exists.[5] Accordingly, the court believes that the adequacy of the representation being supplied by the United States and New York State must be analyzed under the "minimal" standard that applies in the usual case.

### III.

■ The court finds that Ontario satisfies each of the criteria necessary for intervention pursuant to Rule 24(a)(2). The Province of Ontario certainly has "an interest relating to the property or transaction which is the subject of the action." Fed.R. Civ.P. 24(a)(2). The "interest" requirement of Rule 24(a)(2) has not been defined with precision. *Restor-A-Dent Laboratories,*

*supra,* 725 F.2d at 874. However, Ontario's interests are direct and significant enough to bring the Province's application well within this requirement of Rule 24. The migration of chemicals from the S-Area site into the Niagara River is one of the central factors in this lawsuit. There is, of course, a Canadian side of the Niagara River, and the water from the Niagara River flows into Lake Ontario. Lake Ontario and the Niagara River are also the sources of the drinking water for millions of Ontario residents. Ontario also points out that many of its residents own property in the Niagara Region of the Province and that this region is particularly vulnerable to contamination if S-Area chemicals were to migrate through the bedrock underlying the Niagara River. These interests do not suffer from the defects of being indirect or contingent, as was the case in *Restor-A-Dent Laboratories, supra.* . Rather, they are of direct and immediate concern to Ontario.

The court finds that Ontario has adequately demonstrated that it has the "significantly protectable interest" that is required for intervention as of right pursuant to Rule 24(a)(2). *Donaldson v. United States,* 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971) *Stream Pollution Control Board of Indiana v. United States Steel, Inc.,* 62 F.R.D. 31 (N.D.Ind. 1974), *aff'd,* 512 F.2d 1036 (7th Cir.1975), cited by Occidental, does not compel a different result. That case involved an Indiana citizen's motion to intervene in a controversy about pollution in Lake Michigan. While it is true that the court described the applicant's interest in the purity of the lake as "no different than that of thousands of other citizens," the court also noted that the applicant's interest was already being represented in the case by the Attorney General of Indiana. 62 F.R.D. at 35.

The court also finds that the disposition of this action may, as a practical matter, impair or impede Ontario's ability to pro-

---

**5.** The State of New York has expressly stated that it "does not represent the Province of Ontario or its citizens and does not therefore represent any interest which is exclusively that of the intervenor." Affidavit of Mary Ellen Burns, Docket Item 106, ¶ 4,

tect its interests. Any resolution of this case will have at least a *stare decisis* effect upon the adequacy of any remedial plan that is arrived at and implemented in connection with the S-Area Landfill. From a practical standpoint, any remediation process will necessarily be a complex one. Once a remedial program is undertaken, there is a great risk that any attempt to accommodate Ontario's vital interests will be exceedingly difficult, expensive, and wasteful. It is more practical to have Ontario protect its interests now than to attempt to do so later. Furthermore, the *stare decisis* effect of a judgment is a sufficient basis for determining that the disposition of the action may impair the applicant's ability to protect its interests. *New York Public Interest Research Group v. Regents of the University of the State of New York*, 516 F.2d 350, 352 (2d Cir.1975) [hereinafter cited as *NYPIRG*]; *Spirt v. Teachers Insurance and Annuity Association*, 93 F.R.D. 627, 643 (S.D.N.Y. 1982). Ontario has therefore satisfied this requirement of Rule 24(a)(2).

The court has previously noted that Ontario's burden of showing that its interests may not be adequately represented is a "minimal" one. *Trbovich v. United Mine Workers, supra*, 404 U.S. at 538 n. 10, 92 S.Ct. at 636 n. 10. The court finds that Ontario has sustained this minimal burden. The interests of Ontario and the present party plaintiffs are not adverse, and Ontario does not suggest that there has been a lack of diligence on the part of the United States or New York State. Indeed, by this order, the court does not question the good faith or diligence of the United States or New York State. If an applicant shows that the present parties have interests adverse to his, or that the parties professing to represent his interests have not been diligent, a finding of inadequate representation is clearly indicated. *Stadin v. Union Electric Co.*, 309 F.2d 912, 919 (8th Cir.1962), *cert. den.*, 373 U.S. 915, 83 S.Ct. 1298, 10 L.Ed.2d 415 (1963). However,

these are not the only circumstances in which intervention is proper. *See, e.g., NYPIRG, supra*, 516 F.2d 350, 352; *Natural Resources Defense Council v. Costle*, 561 F.2d 904, 911–12 (D.C.Cir.1977); 7A Wright and Miller, § 1909 at 523–24 (1972). In *NYPIRG*, the court recognized that the proposed intervenors and the defendants had similar interests but held that intervention was proper because the intervenors could be expected to argue economic factors more strenuously than the defendants.[6] In *Natural Resources Defense Council v. Costle, supra*, the court emphasized that factual disagreement on matters of common interest is a sufficient basis for concluding that a party's representation may be inadequate. In this connection, the court indicated that when questions of "very technical detail and data" are involved, the input of intervenors is useful. 561 F.2d at 912–13.

The court has previously noted that the implementation of a remediation program without input from Ontario would, as a practical matter, impair Ontario's ability to protect its interests. The present case is concededly one in which the interests of the party plaintiffs and Ontario are similar. It might even be said that the *overall* objective of everyone concerned is the same— the complete containment and permanent isolation of the S-Area Landfill. However, a remediation program will necessarily involve the weighing and balancing of many factors, and it is not possible to be certain that the present parties will attach equal significance to what Ontario views as its paramount interests—the prevention of the migration of chemicals into Lake Ontario and into the regional aquifer on the Canadian side of the Niagara River. It is possible, for example, that the United States and New York State will place greater emphasis upon the protection of the Niagara Falls Drinking Water Treatment Plant. In a situation where a perfect solution is

**6.** In *NYPIRG*, three individual pharmacists and the Pharmaceutical Society of the State of New York sought to intervene as defendants in order to oppose plaintiffs' efforts to enjoin the enforcement of a regulation which prohibited the advertising of prescription drugs.

not possible, the protection of different interests ought to be assured.

Given the possibility of factual disagreements, the vast amount of technical detail involved, and the likelihood that Ontario and the present plaintiffs will place different emphasis upon different problems, the court believes that Ontario has borne its burden of showing that its interests may be inadequately represented. *NYPIRG, supra,* 516 F.2d at 352, *Natural Resources Defense Council v. Costle, supra,* 561 F.2d at 911–12.

The remaining Rule 24(a)(2) factor concerning Ontario's application is timeliness. On this point, it is important to note that Ontario has never sought to involve itself in the settlement negotiations that have been conducted between the parties throughout the pendency of this action. Ontario's chief concern is to be able to protect itself from what it views as a possibility that the settlement will not adequately protect its interests. Ontario seeks a role similar in many respects to that of an *amicus curiae.* Ontario wishes to participate in the hearings which this court will hold before the court decides whether the agreement ought to be approved. Party status is sought so that Ontario will be in a position to call its own witnesses and engage in extensive cross-examination of the witnesses called by the other parties. (Ontario Reply Memorandum, Docket Item 113, p. 27.) Additionally, attaining party status will enable Ontario to appeal from a judgment approving the agreement if the agreement is approved and Ontario believes it is unsatisfactory. For these purposes, Ontario's application is not untimely.

## IV.

It remains to be decided which claims Ontario will be allowed to assert. Ontario invokes section 505(a)(1) of the Clean Water Act [CWA] (33 U.S.C. § 1365(a)(1))[7] and section 7002(a)(1) of the Resource Conservation and Recovery Act [RCRA] (42 U.S.C. § 6972(a)(1)) for the purpose of asserting its federal claims. Defendant Occidental has pointed out, however, that there is some question as to whether Ontario is the kind of entity which is entitled to assert claims under these provisions. Specifically, Occidental contends that Ontario is not a "citizen" for the purposes of the Clean Water Act's citizen suits provision (33 U.S.C. § 1365) or a "person" for the purposes of a similar provision in RCRA (42 U.S.C. § 6972).[8] Ontario does not concede

7. This is the "citizen suits" provision of the CWA. It provides as follows:

§ 1365. Citizen Suits
Authorization; jurisdiction
(a) Except as provided in subsection (b) of this section, any citizen may commence a civil action on his own behalf—
(1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or
(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator. The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an effluent standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may

be, and to apply any appropriate civil penalties under section 1319(d) of this title.

8. This is RCRA's counterpart to CWA's citizen suits provision. It provides as follows:

§ 6972 Citizens suits
(a) In general
Except as provided in subsection (b) or (c) of this section, any person may commence a civil action on his own behalf—
(1) against any person (including (a) the United States, and (b) any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of any permit, standard, regulation, condition, requirement, or order which has become effective pursuant to this chapter; or
(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator. Any action under paragraph (a)(1) of this subsection shall be brought in the district court for the district in which the alleged violation occurred. Any action brought un-

this point, but the Province does agree that it is a serious issue. However, Ontario contends that the issue is not material to the question of whether it may assert the federal statutory claims as an intervenor. Ontario's argument is that, even if it is not a "citizen" or "person" within the meaning of these statutes, the court may entertain the statutory claims by exercising "ancillary" jurisdiction over them.

The court believes that Ontario's federal statutory claims are not claims over which this court may exercise ancillary jurisdiction if it is assumed (without deciding)[9] that Ontario is not the kind of entity that may bring citizen suits under RCRA or CWA. Ancillary jurisdiction is a doctrine which holds that a court may, in a proper case, adjudicate a claim over which neither the constitution nor a statute confers jurisdiction. C. Wright, *Law of Federal Courts*, § 9 (4th ed. 1983). A claim is "ancillary" when there is no independent jurisdictional basis for it to be in federal court, but the court may nonetheless adjudicate it because it bears a sufficiently close relationship to a claim which is already properly before the court. In an intervention context, it is generally held that a party intervening as of right may assert ancillary claims. *Blake v. Pallan*, 554 F.2d 947, 957 (9th Cir.1977). Ancillary claims are also common in other forms of multiparty practice. *See Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 375 n. 18, 98 S.Ct. 2396, 2403 n. 18, 57 L.Ed.2d 274 (1978). However, the concept of ancillary jurisdiction does not create claims where none had existed before. Rather, it provides a forum for the adjudication of claims which exist but which, under the circumstances, would be prejudiced by the adjudication of a pending case in the absence of the party seeking to assert them. In the present case, Ontario endeavors to invoke the ancillary jurisdiction doctrine for the purpose of asserting a claim which, as to the Province, might not exist. This would be a distortion of an otherwise useful device. Consequently, the court shall not exercise ancillary jurisdiction over Ontario's federal claims.

Ontario's common law claim does not suffer from this defect. This claim is concerned mainly with contamination of the Niagara River and Lake Ontario but also includes, by reference, an allegation concerning the migration of solid wastes through the bedrock underlying the Niagara River.[10] As to this claim, there is an independent jurisdictional basis, because Ontario is a foreign state and is therefore able to bring an action against Occidental. 28 U.S.C. § 1332(a)(4). Consequently, this claim is properly before the court.

## V.

### Conclusion

The motion of the Province of Ontario and the Minister of the Environment to Intervene in this action as a matter of right is granted with respect to the "fourth claim" set forth in the complaint in intervention.

So ordered.

der paragraph (a)(2) of this subsection may be brought in the district court for the district in which the alleged violation occurred or in the District Court of the District of Columbia. The district court shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such regulation or order, or to order the Administrator to perform such act or duty as the case may be.

9. The court believes that this question should be left undecided at the present time. Ontario considers this issue to be of great significance to its strategy for protecting its environment. It has not briefed the question, although it had offered

to do so if the court believed the issue needed to be decided in order to pass upon its application to intervene. (Docket Item 113, p. 38 n. 1.) Likewise, the United States has not argued this point, although it would seem that this is a question of considerable importance to the Environmental Protection Agency. Occidental is the only party that briefed the question, but its treatment of it was cursory. Since the court is able to grant Ontario's motion without deciding this question, I shall not endeavor to pass upon it now in the absence of fully developed arguments from all counsel.

10. Ontario complaint in intervention, Docket Item 102 ¶¶ 24, 55–68.