**UNITED STATES of America and the State of New York, Plaintiffs-Appellees,**

**The Province of Ontario, Canada, and the Minister of the Environment of the Province of Ontario, Canada, Plaintiffs-Intervenors-Appellants,**

v.

**HOOKER CHEMICAL & PLASTICS CORP., Hooker Chemical Corp., Occidental Petroleum Investment Co., Occidental Petroleum Corp., and the City of Niagara Falls ("S" Area Landfill), Defendants-Appellees.**

**No. 172, Docket 85–6130.**

United States Court of Appeals, Second Circuit.

Argued Oct. 11, 1985.

Decided Nov. 6, 1985.

Bruce J. Terris, Washington, D.C. (Terris and Sunderland, Washington, D.C., of counsel), for plaintiffs-intervenors-appellants.

Jacques B. Gelin, Dept. of Justice, Washington, D.C. (F. Henry Habicht II, Asst. Atty. Gen., Washington, D.C., and Salvatore R. Martoche, U.S. Atty., Buffalo, N.Y.; David C. Shilton and Bruce J. Berger, Attys., Dept. of Justice, Washington, D.C.; and William Walsh, Atty., E.P.A., Washington, D.C., of counsel), for plaintiff-appellee U.S.

Beryl Kuder, Asst. Atty. Gen., Environmental Protection Bureau, Dept. of Law, New York City, for plaintiff-appellee State of New York.

Joel E. Schweitzer, Niagara Falls, N.Y. (Gellman, Brydges, Schroff & Schweitzer, Niagara Falls, N.Y., of counsel), for defendant-appellee City of Niagara Falls.

George Berger, New York City (Louis Nizer and Martin B. Wasser of Phillips, Nizer, Benjamin, Krim & Ballon, New York City; Thomas H. Truitt, William R. Weissman and Keith S. Watson of Wald, Harkrader & Ross, Washington, D.C.; and David K. Floyd of Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, N.Y., of counsel), for defendants-appellees Hooker Chemical & Plastics Corp., et al.

Before LUMBARD, VAN GRAAFEILAND and MESKILL, Circuit Judges.

PER CURIAM:

Because the City of Niagara Falls has an abundant supply of water and electric power close at hand, it is the situs of several electrochemical manufacturing plants. It is also the situs of a number of dumping grounds for chemical refuse, one of which is a seven-acre parcel adjoining the plant of Hooker Chemical & Plastics Corporation. It is estimated that, between 1947 and 1961, Hooker disposed of 63,000 tons of chemical waste in this parcel. Unfortunately, putting chemicals into the ground is a lot simpler than getting them out.

In 1969, the United States brought the above action against Hooker and its several parent corporations in the United States

District Court for the Western District of New York for the purpose of remedying the allegedly dangerous condition which existed at this seven-acre parcel. Since that time, experts retained by the Government and Hooker spent over 50,000 hours developing what they believed to be a feasible, effective remedy. The end result was a 208-page settlement agreement, which has been approved by Chief Judge Curtin. 607 F.Supp. 1052. The Province of Ontario, Canada and Minister of the Environment of the Province of Ontario, Canada, who were permitted to intervene on the basis of their claim that the dumping site constituted a common law nuisance, 101 F.R.D. 444, now appeal. We affirm.

Because the terms of the settlement agreement are reviewed at length in Chief Judge Curtin's opinion, 607 F.Supp. 1057–1066, and more briefly in a prior opinion of this Court, 749 F.2d 968, 975–76, there is no need for another detailed review. In brief, the program agreed upon is one of containment, *i.e.*, the prevention of chemical migration from the contaminated site, together with the gradual removal through a system of drainage of all save immovably saturated chemicals. This, the settling parties agree, is the best solution of the problem in the present stage of scientific, ecological development. Should this long-range program prove ineffective at some future time, Hooker is required to use whatever "Requisite Remedial Technology" then is available to remedy the deficiency. The district court correctly stated that the concept of Requisite Remedial Technology, as provided for in the agreement, "is very flexible" and that "[e]xcavation and incineration are not excluded from the realm of possible future alternative solutions if they become necessary." 607 F.Supp. at 1070. See also Chief Judge Curtin's interpretation of "Requisite Remedial Technology" as used in a similar settlement agreement covering another contaminated Hooker landfill, *United States v. Hooker Chemicals & Plastics Corp.*, 540 F.Supp. 1067, 1076–79 (W.D.N.Y.1982).

The test for affirmance of the district court's judgment is abuse of discretion.

*Berkman v. City of New York*, 705 F.2d 584, 597 (2d Cir.1983). Bearing in mind the well-established policy of encouraging settlements, *Patterson v. Newspaper and Mail Deliverers' Union of New York and Vicinity*, 514 F.2d 767, 771 (2d Cir.1975), *cert. denied*, 427 U.S. 911, 96 S.Ct. 3198, 49 L.Ed.2d 1203 (1976), and the fact that the instant settlement has the approval of the government agencies charged with the enforcement of the environmental protection statutes, *United States v. Hooker Chemicals & Plastics Corp., supra*, 540 F.Supp. at 1080, we have no hesitation in affirming.

Intervenors' arguments against affirmance are not persuasive. Despite intervenors' allegations of common law nuisance, the evidence is uncontroverted that no chemicals have migrated over one and one-half miles to the Canadian side of the Niagara River, and there is no evidence of a potential for them to migrate that far. We find no merit in intervenors' argument that, in the event this latter prognostication proves to be wrong, Hooker's obligation to undertake Requisite Remedial Technology will not give Ontario sufficient protection. The district court's broad interpretation of this phrase is determinative of that issue.

Because the district court has retained jurisdiction to enforce its judgment, it undoubtedly will have a substantial concern for the consistency of its holdings, *see Heyman v. Kline*, 456 F.2d 123, 131 (2d Cir.), *cert. denied*, 409 U.S. 847, 93 S.Ct. 53, 34 L.Ed.2d 88 (1972), and cannot be expected to reexamine its broad interpretation absent a strong showing of clear error, *United States v. Turtle Mountain Band of Chippewa Indians*, 612 F.2d 517, 521, 222 Ct.Cl. 1 (1979); *Zdanok v. Glidden Co., Durkee Famous Foods Division*, 327 F.2d 944, 953 (2d Cir.), *cert. denied*, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964). Moreover, because intervenors have participated fully in litigating the meaning of the phrase, Requisite Remedial Technology, this is a clear case of issue preclusion by way of either res judicata or collateral estoppel. *Siegel v. National Periodical Publications, Inc.*, 508 F.2d 909, 913 (2d

Cir.1974); *Parklane Hoisery Co. v. Shore,* 439 U.S. 322, 336 n. 23, 99 S.Ct. 645, 654 n. 23, 58 L.Ed.2d 552 (1979); *Sea-Land Services, Inc. v. Gaudet,* 414 U.S. 573, 593, 94 S.Ct. 806, 819, 39 L.Ed.2d 9 (1974).

Assuming for the argument that Ontario and its Minister of Environment, who were permitted to intervene for the purpose of arguing their claim of common law nuisance, may also claim the benefit of federal environmental statutes, their contentions concerning these statutes were rejected by the district court. 607 F.Supp. 1067–70. We agree with the district court's analysis, and see no need to add to what already has been said.

Having reviewed almost 1900 pages of appendices and over 200 pages of legal arguments, we cannot help but be impressed with Chief Judge Curtin's handling of the burdensome environmental litigation originating in Niagara Falls, of which the instant case is but a part. The district court docket sheet in this case alone contains over 225 entries, 14 of which indicate meetings between court and counsel. We commend Chief Judge Curtin for his dedication to a difficult task. His judgment in the instant case is affirmed.