**UNITED STATES of America**

v.

**SHAFFER EQUIPMENT COMPANY, Anna Shaffer, Berwind Land Company, Berwind Corporation and Johns Hopkins University.**

**Civ. A. No. 5:90–1195.**

United States District Court,
S.D. West Virginia,
Beckley Division.

Sept. 27, 1994.

Richard B. Stewart, Asst. Atty. Gen., Michael D. Goodstein, Sr. Atty., Robert H. Oakley, Sr. Counsel, Environmental Enforcement Section, Environment and Natural Resources Div., U.S. Dept. of Justice, Washington, DC, Carol A. Casto, Asst. U.S. Atty., Charleston, WV, for the U.S.

Johnnie E. Brown, Cynthia M. Salmons, McQueen Law Offices, L.C., & Anthony P. Tokarz, Bowles, Rice, McDavid, Graff and Love, Charleston, WV, for Shaffer Equip. Co. & Anna Shaffer.

John H. Tinney, Spilman, Thomas, Battle & Klostermeyer, Charleston, WV, for Berwind Corp.

Robert A. Lockhart, Robert G. McLusky, Barbara D. Little, Jackson & Kelly, Charleston, WV, for Johns Hopkins University.

## *MEMORANDUM OPINION AND ORDER*

HALLANAN, District Judge.

### I. *BACKGROUND*

This matter is before the Court via the United States of America's Motion to Enter Proposed Consent Decrees.

On July 8, 1994 consent decrees between the United States of America (United States) and Defendants Anna Shaffer and Shaffer Equipment Company (Shaffer), the United States and Defendant Berwind Land Company (Berwind), and the United States and Defendant Johns Hopkins University (Johns Hopkins) were lodged with this Court. Public notice of their lodging was published in the Federal Register on July 21, 1994 and a thirty day comment period began on that date (*See* 59 Fed.Reg. 37265), pursuant to the policy of the United States Department of Justice and consistent with 28 C.F.R. Section 50.7 and 42 U.S.C. Section 9622(d)(2). The comment period closed on August 22, 1994 and no comments were received on the proposed consent decrees. Therefore, the Court is now prepared to rule on the instant Motion.

The approval of a CERCLA (Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. Section 9601, *et seq.*, as amended) consent decree is committed to the informed discretion of the District Court. *United States v. Akzo Coatings of America, Inc.,* 949 F.2d 1409, 1423–24 (6th Cir.1991); *United States v. Cannons Engineering Corp.,* 899 F.2d 79, 84 (1st Cir.1990); *United States v. Hooker Chemical & Plastics Corp.,* 776 F.2d 410, 411 (2d Cir.1985). "Before approving a CERCLA settlement the Court must be convinced that it is fair, adequate, and reasonable, and consistent with the Constitution and the mandate of Congress." *City of New York v. Exxon Corp.,* 697 F.Supp. 677, 692 (S.D.N.Y.1988), *citing United States v. Conservation Chemical Co.,* 628 F.Supp. 391, 400 (W.D.Mo.1985).

The District Court, however, must accord deference to the EPA's expertise and its determination that the settlement is appropriate. *United States v. Cannons Engineering Corp.,* 720 F.Supp. 1027, 1036 (D.Mass. 1989), *aff'd,* 899 F.2d at 84. The Court, therefore, "does not have the power to modify a consent decree; it may only approve or reject it." *Id. citing United States v. Jones & Laughlin Steel Corp.,* 804 F.2d 348 (6th Cir.1986); *Walsh v. Great Atlantic & Pacific Tea Co.,* 726 F.2d 956, 965 (3rd Cir.1983); *Officers for Justice v. Civil Service Commission,* 688 F.2d 615, 630 (9th Cir.1982).

### A. THE MINDEN SITE CLEANUP

At the outset, the Court will comment that it fully recognizes that this whole matter began with the release and threatened release of polychlorinated biphenyls (PCBs) at the Shaffer Equipment Site in Minden, West Virginia, for which these Defendants are by all accounts responsible. Unfortunately, this matter does not end, as it should have, with the named Defendants in this case.

The Environmental Protection Agency (EPA) and the Department of Justice (DOJ) have incurred at least six million four hundred seventy-five thousand dollars ($6,475,-000) in response costs for attempting to eliminate the release or threatened release of hazardous substances from the Shaffer Equipment Site in Minden, Fayette County, West Virginia (the Site). Under CERCLA, the United States sought reimbursement for the full amount of these response costs from Defendants Shaffer, Berwind, and Johns Hopkins.

At the outset of this action, the United States appeared to have a good case for reimbursement of their removal, remedial and other costs as the Defendants are arguably persons liable under CERCLA. In its complaint the United States alleged, among other allegations, that Shaffer, the current owner of the Site, and Berwind are liable persons "who at the time of disposal of any hazardous substance owned or operated a facility in which hazardous substances were disposed of." 42 U.S.C. Section 9607(a)(2). The United States also alleged that Johns Hopkins is a "person who by contract, agree-ment, or otherwise arranged for disposal or treatment ... of hazardous substances owned or possessed by such a person." 42 U.S.C. Section 9607(a)(3).

The consent decrees that the United States moves the Court to enter reflect a total monetary settlement value of seven hundred twenty-five thousand dollars ($725,-000). This amount is substantially less than the costs incurred by the United States in cleaning up the Site.

### II. REASONS TO ACCEPT SETTLEMENT

█ Although the Court is prepared to enter the proposed consent decrees, it feels compelled to comment on the vast discrepancy between costs incurred and those recovered. It is the Court's opinion that in the case of each Defendant, the United States' mismanagement of this entire matter sabotaged its potential recovery of response costs from responsible persons, leaving the bulk of these costs to be born by the Superfund as established by CERCLA. *See* Superfund Amendments and Reauthorization Act of 1986, Pub.L. 99–499, Oct. 17, 1986, 100 Stat. 1613 (codified as amended in scattered sections of 10 U.S.C., 26 U.S.C., 29 U.S.C. and 42 U.S.C.), *as amended.* The Court has observed a tendency on the part of the EPA to treat this appropriation as though it is manna from heaven to be thrown around at will. The Court would like to remind all who are involved in this case that the Superfund is nothing more than an environmental tax on certain corporations which ultimately lands squarely on the rest of us. *See* Superfund Revenue Act of 1986, Pub.L. 99–499, Title V, Oct. 17, 1986, 100 Stat. 1760 (codified as amended in scattered sections of 26 U.S.C. and 42 U.S.C.), *as amended.*

### A. THE "CARON PROBLEM"

Not the slightest in a series of blunders by the EPA is the fact that the EPA's first chosen method for removal of hazardous substances from the Site, solvent extraction, proved unsuccessful, after an expenditure of one million two hundred thirty five thousand dollars ($1,235,000). The solvent extraction method, a new and relatively unestablished

technology, was chosen by Robert E. Caron, the EPA's "On Scene Coordinator." Mr. Caron is a man who has misrepresented his academic credentials and achievements throughout his career and subsequent to this case was convicted of perjury, specifically making material false declarations in violation of 18 U.S.C. Section 1623. At the time of Mr. Caron's decision to use solvent extraction, solvent extraction had only been pilot tested. At that time the EPA was directed to utilize "established technology when feasible and cost-effective." 40 C.F.R. Section 300.61(c)(4) (1982).

Another decision made by Mr. Caron was raised as a challenge by Defendants when this case first came before this Court. This was the decision to exceed the one million dollar ($1,000,000) ceiling in place at the time for removal actions. *See* 40 C.F.R. Section 300.66 (1985). This could best be described as the first step in a series of many missteps by an inept and deceitful "On Scene Coordinator" who seems to have been let loose in Minden, West Virginia with a virtually unbounded authority to spend federal money. Defendants have also challenged eight hundred eighty thousand dollars ($880,000) in initial costs as excessive. These expenditures were all approved by Mr. Caron. Defendants also question Mr. Caron's decision to ship contaminated soil off-Site at a cost of approximately one million nine hundred thousand dollars ($1,900,000). Defendants argue that once the soil had been consolidated and covered, the risk posed by the Site was minimal and the expense unnecessary.

Because of Mr. Caron's misconduct in this case, Defendants can seek *de novo* review of Mr. Caron's decisions, among them the decisions to use solvent extraction and to exceed the $1,000,000 limit, as hereinbefore noted, if the Court rejects the Proposed Consent Decrees. In that event, the United States will not be able to rely on Mr. Caron's testimony regarding these expenses. These combined factors pose substantial risks to the United States' ability to prevail in this litigation and are compelling conditions which force this Court to accept the Proposed Consent Decrees.

## B. ANNA SHAFFER AND SHAFFER EQUIPMENT COMPANY

In addition to the arguments raised above, Shaffer and Berwind have asserted counterclaims against the United States Department of the Interior (DOI) as a current owner of a portion of the site. The portion allegedly owned by the DOI is a railroad right-of-way conveyed to the DOI by deed dated September 27, 1985 by West Virginia's Public Land Corporation to be part of the New River Gorge National River Park, a Park administered by the DOI's Park Service. Shaffer and Berwind assert that the DOI is liable for a portion of the response costs under CERCLA, 42 U.S.C. Section 9607(a).

The United States moved for summary judgment on this counterclaim, claiming that the DOI does not own any portion of the Site. In an alternative argument, the United States maintains it is not liable for any response costs because cleanup was completed before the property was conveyed to the DOI. This motion is still pending before this Court.

Shaffer also asserts no liability for contamination cleaned up in 1990, costing an additional three hundred eighty thousand dollars ($380,000), claiming this was new contamination caused by vandals.

Additionally, Shaffer Equipment Company is no longer an operating company, with no real assets besides its insurance policies which contain pollution exclusion clauses. Anna Shaffer, sole shareholder of Shaffer Equipment Company, does not have sufficient assets to contribute in any significant way to the EPA's response costs either. Given Shaffer's limited ability to pay, their arguments concerning the EPA's response action, and the fact that the United States cannot use Mr. Caron's testimony to defend their response costs, Shaffer's offer of six hundred thousand dollars ($600,000) in settlement of past claims appears reasonable to the Court.

## C. BERWIND LAND COMPANY

Although Berwind has owned a portion of the Site since at least 1971 when it acquired its interest from its parent corporation, Ber-

wind Corporation, Berwind argues it is an innocent landowner under CERCLA, 42 U.S.C. Section 9607(b)(3). Berwind claims it has a third party defense to liability. While the United States believes it can prove Berwind had actual knowledge of how its property was being used, if successful, this defense would relieve Berwind of all liability.

Berwind also raises a defense to joint and several liability, relying on a letter from EPA Assistant Regional Counsel dated February 15, 1992 in which Berwind was invited to clean up its portion of the Site. The letter states that Berwind should expect to pay between one hundred fifty and two hundred thousand dollars ($150,000–$200,000) when the EPA cleans up Berwind's portion. Berwind maintains that this letter implies that the EPA believed the environmental harm to be divisible and that Berwind was only liable for its portion of the Site. This contention is also supported by the testimony of Berwind employees and can apparently only be rebutted by Mr. Caron.

Additionally, Berwind Corporation, Berwind Land Company's parent, has filed a motion under Rule 11 of the Federal Rules of Civil Procedure against the United States for naming Berwind Corporation as a defendant without sufficient evidence.

In light of Berwind's claims and defenses, resolved under its Proposed Consent Decree, and other provisions of the Proposed Consent Decrees including a reopener for future release of hazardous substances caused by Berwind, the Court believes Berwind's settlement offer of seventy five thousand dollars ($75,000) for reimbursement of past response costs is reasonable.

### D. JOHNS HOPKINS UNIVERSITY

The basis for Johns Hopkins' liability are three large used transformers, admittedly filled with PCBs, which Johns Hopkins contends it sent to the Site for re-use by Shaffer Equipment Company. Johns Hopkins has a number of defenses to liability, many of which relate to actions taken by the EPA in its cleanup efforts.

At either Mr. Caron's or the EPA counsel's direction, the EPA removed the Johns Hopkins transformers from the Site and destroyed them before contacting Johns Hopkins. The EPA was required to notify Johns Hopkins, having identified Johns Hopkins as a "potentially responsible person" under CERCLA. The transformers, relevant evidence, were also destroyed without ascertaining in any verifiable manner that they were leaking at the time they were removed from the Site. Regarding these actions taken by the EPA, Johns Hopkins has asserted a claim of governmental misconduct as part of its motion for Summary Judgment. If granted in relation to this part of the motion, this claim would entitle Johns Hopkins to an evidentiary presumption fatal to much of the United States' case. *McGuire v. Sigma Coatings, Inc.*, No. 91–2076, 1993 U.S.Dist. LEXIS 19174 (E.D.La. Nov. 1, 1993).

Johns Hopkins contends that if it had received notice that its transformers were at the Site at the time of cleanup, it would have removed them at a fraction of the cost incurred by the EPA. Johns Hopkins argues that it has thereby also been deprived of an opportunity to show that its transformers did not leak. If the transformers did not leak, Johns Hopkins would only be responsible for disposal of the transformer. Therefore, destruction of the transformers also deprived Johns Hopkins of the opportunity to argue that harm was divisible.

Johns Hopkins further maintains it sent the transformers to Shaffer for re-use and not disposal, and was not an "arranger for disposal" under CERCLA, Section 107(a)(3). *See United States v. Gordon Stafford, Inc.*, 810 F.Supp. 182 (N.D.W.Va.1993); *Chesapeake and Potomac Telephone Company of Virginia v. Peck Iron & Metal Co.*, 814 F.Supp. 1269, 1275 (E.D.Va.1992) (conveyance of usable equipment to be used for its originally intended purpose not "arrangement for disposal.") If it were to prevail in this argument, Johns Hopkins would have no liability.

Johns Hopkins also has a third party defense under CERCLA Section 107(b)(3) for Shaffer's handling of the transformers which if successful would also relieve Johns Hopkins of all liability.

Johns Hopkins can demonstrate that the maximum cost to the United States for removing the transformers in question and their contents was fifty seven thousand four hundred seventy-five dollars ($57,475), including a proportionate share of overhead costs. Given the EPA's mishandling of the transformers, Johns Hopkins' limited involvement and its arguments against all liability, particularly against joint and several liability, the Court believes Johns Hopkins' settlement offer of fifty thousand dollars ($50,000) to be more than reasonable.

## E. THE "CARON PROBLEM:" SNYDER AND HUTCHINS

As the United States admits in its Additional Information Regarding Proposed Settlements, no small part of its mismanagement of this matter was the so-called "Caron Problem," in which it was discovered that Mr. Caron had been substantially misrepresenting his credentials and had given perjured testimony in other matters. Compounding this problem was the fact that the United States' attorneys, J. Jared Snyder and William A. Hutchins, violated their duty of candor to this Court with respect to the "Caron Problem" by repeatedly obstructing Defendants' attempts to uncover Mr. Caron's perjury and failing to reveal what they knew of Mr. Caron's misrepresentation once they learned of it. *See United States v. Shaffer Equipment Co.*, 11 F.3d 450, 461 (4th Cir. 1993). *See also Rules of Professional Conduct,* Rule 3.3(a)(2) (W.Va.1989) ("A lawyer shall not knowingly fail to disclose a material fact to the tribunal when disclosure is necessary to avoid assisting in a criminal or fraudulent act by the client").

In all appearances, actions and proceedings in and within the jurisdiction of this Court, attorneys shall conduct themselves in accordance with the ethical considerations and disciplinary rules of the Model Federal Rules of Disciplinary Enforcement and the said Codes of Professional Responsibility, being subject at all times to the statutes, rules and orders applicable to and controlling the procedures and practice of law in this Court. Attorneys should remember that said codes and rules and orders are minimal standards. The Court encourages counsel to strive to reach the highest standards of ethical conduct.

*Local Rules of the United States District Court for the Southern District of West Virginia,* Rule 1.03(h) (effective through September 1, 1994).

This violation, in fact, compromised the United States to the extent that this Court dismissed the case and awarded attorney fees and costs to Defendants. Indeed, the Court felt compelled to take this severe action, because, as it said, "*there is no price tag that comes with the duty of candor charged by the courts and the applicable rules of professional responsibility.*" *United States v. Shaffer Equipment Co.*, 796 F.Supp. 938, 953 (S.D.W.Va.1992) (emphasis in original), *aff'd in part, rev'd in part, remanded,* 11 F.3d 450 (4th Cir.1993).

Upon appeal the United States Court of Appeals for the Fourth Circuit (Fourth Circuit) found that the sanction of dismissal was too severe and remanded the case on that issue. However, the Fourth Circuit agreed with this Court that Mr. Hutchins and Mr. Snyder had violated their duty of candor to the Court, "exposing *themselves* and their employer to sanctions." *U.S. v. Shaffer* at 461 (emphasis added). Neither Mr. Hutchins nor Mr. Snyder can claim ignorance of an attorney's duty of candor to the Court. Both attended law school and are members of the bar where the Court must assume they have learned something about legal ethics or have been at least exposed to the subject.

In an example of how much damage the "Caron Problem," including the roles played by Mr. Snyder and Mr. Hutchins, may have contributed to the outcome of this litigation, the Fourth Circuit suggested that an appropriate sanction might be the denial of the government's "right to claim any expense which may have been tainted by Caron's misconduct." *U.S. v. Shaffer,* 11 F.3d at 463. By the United States' own admission, the total amount of these expenses, incurred while Mr. Caron was overseeing the Site cleanup, is approximately five million two hundred thirty thousand dollars ($5,230,000), which is approximately eighty percent (80%) of the total cleanup cost of $6,475,000, leaving

the United States with a remaining claim against Defendants for only one million two hundred forty-five thousand dollars ($1,245,-000). This remaining claim is the *maximum* the United States would be able to recover under this scenario. However, as hereinbefore noted, each Defendant in this case has significant defenses to their respective liability.

## III. AUTHORITY TO SANCTION

### A. ABUSE OF DISCOVERY

The Court must point out that when Mr. Hutchins and Mr. Snyder breached their duty of candor to the Court they also flagrantly abused the discovery process. In failing to supplement Defendants' discovery requests regarding Mr. Caron's credentials with information that Mr. Snyder admitted was relevant, Mr. Snyder and his immediate supervisor, Mr. Hutchins, violated Rule 26(e) of the Federal Rules of Civil Procedure.

Mr. Snyder and Mr. Hutchins violated Rule 26(e)(1) and Rule 26(a)(2)(C) by failing to supplement information on an expert witness. Rule 26(e)(2) was ignored when Mr. Snyder failed to amend his prior objection to an interrogatory regarding Mr. Caron after he learned that the matter was indeed relevant and his previous objection to the questions was incorrect.

 This Court's discretion to impose sanctions for abuse of discovery is quite broad under its inherent power and under Federal Rule of Civil Procedure 26(e) which itself furnishes fair warning of the Court's power to impose sanctions. *Thibeault v. Square D Co.*, 960 F.2d 239, 245 (1st Cir. 1992). The Rules permit the imposition of a sanction in the form of a fine, paid to the court and not to the opposing party. A finding of contempt is not a prerequisite to the imposition of such a sanction. *Pereira v. Narragansett Fishing Corp.*, 135 F.R.D. 24 (D.C.Mass.1991). Monetary sanctions in the form of attorney fees for litigation abuse in this case would not be barred by sovereign immunity because a sufficiently explicit rule authorizing such an award exists, namely Federal Rule of Civil Procedure 26(e). *See*

*United States v. Horn*, 29 F.3d 754 (1st Cir.1994).

### B. DUTY OF CANDOR

 The Court has the inherent authority to discipline all attorneys who appear before it and "the inherent power extends to the full range of litigation abuses." *U.S. v. Shaffer*, 11 F.3d at 457. *See Chambers v. NASCO*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) *citing Anderson v. Dunn*, 6 Wheat 204, 5 L.Ed. 242 (1821). Therefore, this Court possesses the inherent authority to fashion a sanction for attorneys violating the duty of candor in a manner it finds appropriate. *See Chambers*, 501 U.S. at 44–45, 111 S.Ct. at 2132–33.

 The duty of candor to the tribunal is a widely recognized one within the legal profession, *United States v. Associated Convalescent Enterprises, Inc.*, 766 F.2d 1342, 1346 (9th Cir.1985), and government attorneys, like all attorneys, have a duty to conform to the ethical guidelines of their profession. In so failing to conform, Mr. Hutchins and Mr. Snyder were not acting within the directives of their employment and therefore cannot claim any exemption from sanction for their actions by way of sovereign immunity. Sovereign immunity is not a bar to personal sanctions on government attorneys for their ethical violations because these sanctions do not come from the public coffers. *See U.S. v. Horn*, 29 F.3d at 754.

## IV. SANCTIONS ORDERED

Despite the Fourth Circuit's opinion, the U.S. Department of Justice, Office of Professional Responsibility, has refused to find "misconduct" by Mr. Snyder and Mr. Hutchins, instead characterizing their behavior as "repeated exercises of poor judgment." *Letter from Michael E. Shaheen Jr. to Mr. John Tinney, Attorney and Mr. Richard Rivers, Vice President and General Counsel of Berwind Corporation.*

To demonstrate the cursory attitude of this in-house investigation, the full letter, dated July 19, 1994 is herein quoted:

Dear Messrs. Tinney and Rivers:

This is in final response to your letter of complaint dated February 10, 1992, concerning Justice Department Attorney Jared Snyder and his handling of *United States v. Shaffer Equipment, et al.,* Civil Action No. 5:90–1195 (SD WVa). Subsequently, the U.S. District Court for the Southern District of West Virginia dismissed *Shaffer* on the basis of its findings that Jared Snyder and his supervisor, ENRD senior trial attorney had engaged in intentional misconduct. On appeal, the Fourth Circuit affirmed the district court's findings of misconduct, but reversed and remanded for a sanction short of dismissal. It is our understanding that the matter is presently pending before the district court.

We have carefully reviewed your allegations of misconduct against Mr. Snyder and the court's findings of misconduct against Mr. Snyder and Mr. Hutchins. *We find that Mr. Snyder and Mr. Hutchins engaged in repeated exercises of poor judgment in their handling of aspects of Shaffer. We do not, however, find they engaged in intentional misconduct* [emphasis added]. We have advised the Acting Assistant Attorney General of the Environment and Natural Resources Division of our findings. We are now closing our file in this matter.

If you have any questions, please contact me or Assistant Counsel Rob Lyon on 202–514–3365.

Sincerely,

Michael E. Shaheen Jr.
Counsel

"And thereby hangs a tale."[1] With such perfunctory treatment, two complete sentences, given to matters of ethics found to be worthy of at least a dozen paragraphs by the Fourth Circuit, it is no small wonder, but no excuse, that these attorneys behaved as they did. Quite frankly, it shocked this Court to learn of the Department of Justice's superficial investigation and evaluation of the conduct of these attorneys. We are dealing here with a hodgepodge of bureaucratic bungling and cover up of abysmal proportions.

Be that as it may, as directed by the Fourth Circuit, this case is again before this Court to resolve its merits, which it will do by entering the consent decrees, *and* to sanction the United States, short of outright dismissal, in such a way as to deter future violations of the duty of candor by government attorneys. *U.S. v. Shaffer,* 11 F.3d at 462–63.

Therefore, **IT IS ORDERED** that Mr. J. Jared Snyder shall pay from his personal funds the amount of two thousand dollars ($2,000) and Mr. William A. Hutchins shall pay from his personal funds the amount of two thousand five hundred dollars ($2,500) to reimburse the Superfund (to be deposited into Department of Justice lockbox bank, referencing CERCLA number 03D8, DOJ Case Number 90–11–2–649 and US Attorney Office file number 90V0304) as sanctions for their respective breaches of ethical conduct, namely for violation of the duty of candor to the Court. In determining the amount of sanction the Court deemed appropriate, the Court considered, *inter alia,* the salary levels of these attorneys.

Further, **IT IS ORDERED** that neither Mr. Hutchins or Mr. Snyder shall seek reimbursement for these sanctions from their employer. *See Chilcutt v. United States,* 4 F.3d 1313, 1362 (5th Cir.1993) (Assistant United States Attorney (AUSA) ordered to personally reimburse plaintiffs for attorney fees which arose from AUSA's discovery abuses). *See also J.M. Cleminshaw Co. v. City of Norwich,* 93 F.R.D. 338 (D.C.Conn.1981) (discovery sanction assessed against attorney to be paid to the clerk of the court out of attorney's personal funds). Payment of personal assessments directly into the Superfund is an appropriate way for these attorneys to make some restitution toward this pyramid of errors which ultimately collapsed upon itself, resulting in serious and costly consequences to all those involved in the Minden cleanup debacle.

## V. *VALUE OF THE CONSENT DECREES*

Without the substantial cost to the United States of attorney fees previously awarded,

---

**1.** William Shakespeare, *As You Like It,* Act II, scene vii.

totalling one hundred ninety three-thousand nine hundred thirty-six dollars and fifteen cents ($193,936.15), and with provisions in the consent decrees governing maintenance of the response actions and access to the Site, and provisions allowing the United States to reopen this matter against Shaffer for future response costs and against Berwind for future releases of hazardous substances, the consent decrees actually have a greater value than $725,000. This value could range from as low as nine hundred eighteen thousand nine hundred thirty-six dollars and fifteen cents ($918,936.15) (the total of the $725,000 settlement and $193,936.15 in previously awarded attorney fees) to millions of dollars if there are future releases and response costs.

In addition to the sanctions ordered above and consistent with the consent decrees, **IT IS ORDERED** that those portions of this Court's July 31, 1992 and October 29, 1992 Orders awarding Defendants attorney fees totalling one hundred thirty-three thousand five hundred four dollars and fifty-two cents ($133,504.52) to Berwind's counsel, twenty-four thousand seven hundred seventy-one dollars and fifty-six cents ($24,771.56) to Shaffer's counsel and thirty-five thousand six hundred sixty dollars and seven cents ($35,-660.07) to Johns Hopkins' counsel are **VACATED.**

## VI. *MOTION TO ENTER CONSENT DE-CREES GRANTED*

Due in part to the fact that the consent decrees are more significant than their face monetary value would indicate and due primarily to the mismanagement of this matter which severely weakened the United States' chances for recovery of any substantial portion of its response costs and the conceivably enormous expenses for all parties involved in proceeding with this litigation, the United States' Motion to Enter Proposed Consent Decrees is **GRANTED.** The Court will enter the decrees by executing them in the space provided at the end of each decree.

The Clerk is directed to send a copy of this Order and the executed consent decrees between the United States and Anna Shaffer and Shaffer Equipment Company, the United States and Berwind Land Company, and the United States and Johns Hopkins University to all counsel of record.

IT IS SO ORDERED.