505 S.E.2d 391

**Sylvia GUM, as Executrix for the Estate of Charles Lee Gum, Plaintiff Below, Appellant,**

v.

**Roger Lee DUDLEY, Robert Dudley, Tamera Suzette Baker and Lillian B. Ayr, Defendants Below, Appellees.**

No. 23845.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 15, 1997.

Decided Dec. 8, 1997.

**480**

John C. Skinner, Jr., Stephen Gibson Skinner, Nichols & Skinner, Charles Town, for Appellant.

Thomas G. Steele, Clarksburg, for Appellees, Dudley and Dudley.

Christopher D. Janelle, Henry, Taylor & Janelle, Martinsburg, for Appellees, Baker and Ayr.

Tracey B. Dawson, Steptoe & Johnson, Martinsburg, for State Farm Mutual Insurance.

DAVIS, Justice:

This is an appeal by Sylvia Gum (Mrs. Gum) as executrix for the estate of Charles Lee Gum, plaintiff/appellant, from an order of the Circuit Court of Berkeley County denying her motion to set aside the jury verdict and grant a new trial. Mrs. Gum's motion was predicated on the failure of counsel for Tamera Suzette Baker (Baker) and Lillian B. Ayr (Ayr), defendants/appellees, to disclose a settlement agreement between Baker and Ayr. The issue before this Court is whether the failure to disclose the settlement agreement between Baker and Ayr warranted setting aside the jury verdict and granting a new trial. Additionally, the court must consider whether the attorney's failure to disclose the settlement agreement constituted a violation of the general duty of candor attorneys owe to our courts. For the reasons stated herein this case is affirmed in part; reversed in part; and remanded with directions.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On October 9, 1992, Mr. Gum had an accident involving two vehicles and a tractor trailer. During the accident, Mr. Gum's vehicle was slammed into a stone wall. Five hours after the accident, Mr. Gum died of a heart attack. Mrs. Gum sued four (4) persons in the wrongful death action. Mrs. Gum sued the vehicle driver Roger Dudley and the car's owner Robert Dudley. Mrs. Gum also sued the tractor trailer driver, Tamera Suzette Baker, and Lillian B. Ayr, who owned the tractor trailer. Also, the record reveals that Ayr filed cross-claims against Baker as well as the Dudleys.

Ayr's claim against Baker focused on Ayr's right of indemnification and contribution from Baker, the driver of Ayr's tractor trailer. Ayr's attorney, Tammy Mitchell Bittorf, approached Commerce Insurance regarding potential coverage and a joint defense under the Commerce Insurance policy for Ayr and Baker. Commerce Insurance agreed to a joint defense for Ayr and Baker. Therefore, on July 18, 1995, counsel for Baker, Mr. Christopher D. Janelle, entered his appearance on behalf of Ayr by means of a Notice of Appearance. The Notice of Appearance was served on all parties.

At some point thereafter, Mr. Janelle recognized a potential conflict resulting from his joint representation of both Baker and Ayr due to Ayr's cross-claim against Baker. In an effort to extinguish the conflict, sometime in mid-July, 1995, attorney Tammy Mitchell Bittorf prepared an agreed order wherein defendant, Baker confessed judgment in the cross-claim filed by Ayr.

The agreed order confessing judgment stated in relevant part as follows:

### AGREED ORDER

*On this 16th day of July, 1995, the Defendant, Tamera Suzette Baker, by counsel, Christopher D. Janelle and the Co–Defendant, Lillian Ayr, by counsel, Tammy Mitchell Bittorf, and entered into an agreement and now do represent to the Court as follows:*

*1. Lillian B. Ayr has alleged and filed herein a Cross claim against Tamera Suzette Baker for contribution and indemnification.*

*2. Tamera Suzette Baker does desire and hereby wish to confess judgment upon said Cross claim of Lillian B. Ayr.*

*Accordingly, Tamera Suzette Baker, by counsel, having expressed to this Court a desire to confess judgment to the Cross claim as brought by Lillian B. Ayr for indemnification and contribution, it is ADJUDGED and ORDERED that judgment upon the Cross claim brought herein by Lillian B. Ayr against Tamera Suzette Baker is entered in favor of Lillian B. Ayr. It is thus further ORDERED that Tamera Suzette Baker indemnify and hold harmless Lillian B. Ayr for any and all sums awarded herein in favor of the Plaintiff against Lillian B. Ayr.*

---

*Tammy Mitchell Bittorf*

---

*Christopher D. Janell[e]*

---

### JUDGE OF THE CIRCUIT COURT OF BERKELEY COUNTY, WEST VIRGINIA

The record reflects that attorney Bittorf, as the author of the agreed order, tendered the same to Judge Wilkes during a pretrial hearing.[1] Plaintiff's counsel, attorney Skinner, was neither copied on the agreed order nor notified of it being tendered to the court for entry prior to commencement of the trial.

The trial began on August 30, 1995. The Dudley's had one trial attorney, Thomas G. Steele. Baker and Ayr had one trial attorney, Christopher D. Janelle. On the second day of trial, Mrs. Gum's attorney filed a motion requesting the circuit court "require the defendant to disclose any settlement agreement between themselves". Counsel for the Dudleys, Thomas G. Steele, responded in open court that no such agreement existed between the defendants. Counsel for Ayr and Baker, *Mr. Janelle, although at the proceeding, made no response to the court.* (Emphasis added). The circuit court, believing there to be no settlement agreement among the defendants continued the trial. The jury returned a verdict for the defendants on August 31, 1995.

Two weeks after the trial, Mrs. Gum's attorney learned that Baker and Ayr had entered into a settlement agreement in July of 1995. The settlement was discovered after Mrs. Gum's counsel received a copy of the agreed order from the circuit clerk's office. Although, the agreed order was entered by the circuit court on August 31, 1995, neither attorney Steele nor attorney Skinner were notified, in any manner, by either attorney Janelle, or attorney Bittorf, that an order had been submitted to Judge Wilkes for entry.[2]

Mrs. Gum's attorney filed a motion for post-trial discovery to ascertain the terms of the settlement agreement. Mrs. Gum's attorney also filed a motion to set aside the verdict and grant a new trial based upon the failure to disclose the settlement agreement.

---

1. The manner in which the agreed order was presented to the trial court is unclear from the record. It appears that the trial court was given the agreed order at an unspecified pretrial hearing. The record does not disclose who was present at the pretrial hearing. Nor is it indicated that the trial judge actually knew he was being given an agreed order during the pretrial hearing. The trial judge stated during post-trial motions that over 100 documents were presented to him for entry and that he was not aware of the agreed order until he signed it on the last day of the trial.

2. We note that under Rule 5(a) of the West Virginia Rules of Civil Procedure, the agreed order was required to be served upon all parties of record. Rule 5(a) states:

    (a) Service: When Required. Except as otherwise provided in these rules, every order required by its terms to be served, every pleading subsequent to the original complaint unless the court otherwise orders because of numerous defendants, every paper relating to discovery required to be served upon a party unless the court otherwise orders, every written motion other than one which may be heard ex parte, and every written notice, appearance, demand, offer of judgment, designation of record on appeal, and similar paper shall be served upon each of the parties. No service need be made on parties in default for failure to appear except that pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided for service of summons in Rule 4.

    Mrs. Gum also contends that the general requirement of a written motion in Rule 7(b)(1) was violated. This rule, however, expressly exempts the written motion requirement when a motion is made during a hearing or trial. The record indicates that the agreed order was presented to the court during a pretrial hearing which would dispense with the need for a written motion.

A hearing on the motions was held on March 11, 1996. At the hearing Mrs. Gum's attorney informed the circuit court that no motion was filed asking the court to enter the agreed order; that counsel never received notice that an agreed order was submitted to the court; and that counsel, Mr. Janelle, indicated by his silence at trial that no settlement agreement was entered into between the defendants. The circuit court found that Mrs. Gum failed to show any prejudice to her case because of the defendant's failure to disclose the settlement agreement. The circuit court denied all post-trial motions. This appeal followed. The questions presented to this Court are whether a new trial should have been granted because Mr. Janelle failed to disclose the settlement agreement between Ayr and Baker, and whether Mr. Janelle's failure to disclose such an agreement constitutes a violation of the general duty of candor.

## II.

### STANDARD OF REVIEW

■ We set out the standard of review for an order denying a motion for a new trial in syllabus point 3 of *In re State Public Bldg. Asbestos Litigation*, 193 W.Va. 119, 454 S.E.2d 413 (1994):

A motion for a new trial is governed by a different standard than a motion for a directed verdict. When a trial judge vacates a jury verdict and awards a new trial pursuant to Rule 59 of the West Virginia Rules of Civil Procedure, the trial judge has the authority to weigh the evidence and consider the credibility of the witnesses. If the trial judge finds the verdict is against the clear weight of the evidence, is based on false evidence or will result in

3. At the time Ms. Baker and Ms. Ayr entered their settlement agreement they had separate counsel.

4. A Mary Carter agreement is a term of art which is defined as follows:

"'In essence, a Mary Carter agreement is a contract by which one or more defendants in a multi-party case secretly align themselves with the plaintiff and agree to continue as active defendants in the suit while working to aid in

a miscarriage of justice, the trial judge may set aside the verdict, even if supported by substantial evidence, and grant a new trial. A trial judge's decision to award a new trial is not subject to appellate review unless the trial judge abuses his or her discretion.

■ Mrs. Gum contends that a new trial should have been granted due to Mr. Janelle's failure to disclose the Baker/Ayr settlement when the court so inquired. The standard of review is the same as any order denying a motion for a new trial. "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed de novo." Syl. Pt. 4, *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996).

## III.

### DISCUSSION

A. ***Failure to Disclose the Settlement Agreement:***
***Its Impact on the Trial***

■ Mrs. Gum contends that our decision in *State ex rel. Vapor Corp. v. Narick*, 173 W.Va. 770, 320 S.E.2d 345 (1984) required disclosure of the settlement agreement between defendants, Baker and Ayr.[3] We addressed the issue of the disclosure of "Mary Carter" type settlement agreements[4] in syllabus point 1 of *Vapor Corp.*, wherein we held "[m]ost courts in considering the validity of "Mary Carter" and related settlement agreements hold that prompt disclosure is required to both the court and opposing counsel once such a settlement is made."

the plaintiff's case; in exchange, their own maximum liability will be diminished proportionately by increasing the liability of the non-agreeing defendant or defendants[.]'"
*Vapor Corp.*, 173 W.Va. at 772, 320 S.E.2d at 347, quoting *Vermont Union School Dist. No. 21 v. H.P. Cummings Constr. Co.*, 143 Vt. 416, 469 A.2d 742, 748 (1983). We note that the name for this type of settlement is derived from *Booth v. Mary Carter Paint Co.*, 202 So.2d 8 (Fla.App. 1967), overruled, *Ward v. Ochoa*, 284 So.2d 385 (Fla.1973).

We explained the necessity for disclosure to the court and opposing counsel in *Vapor Corp.*:

> Disclosure is required because such settlements frequently tend to realign the loyalties of the parties and change their trial tactics from what normally would be expected. It is critical to the fair conduct of the trial to disclose the settlement terms so that the court, with the assistance of counsel, may decide whether the agreement is valid, and if so, what measures should be taken to ensure that the nonsettling party or parties will not be prejudiced.[5]

*Id.* 173 W.Va. at 773, 320 S.E.2d at 348.

■ The initial problem with Mrs. Gum's reliance upon *Vapor Corp.* is that the decision addressed Mary Carter agreements. We summarized the four essential features of a Mary Carter agreement in *Reager v. Anderson,* 179 W.Va. 691, 701, 371 S.E.2d 619, 629 (1988):

> "(1) The agreeing defendant(s) must remain in the action in the posture of defendant(s); (2) The agreement must be kept secret; (3) The agreeing defendant(s) guarantee to the plaintiff a certain monetary recovery regardless of the outcome of the action; and (4) The agreeing defendant(s)' liability is decreased in direct proportion to the increase in the nonagreeing defendant(s)' liability."

The underlying facts of the cross-claim settlement agreement between defendants Baker and Ayr does not meet the classic definition of a Mary Carter agreement.

■ Mary Carter agreements contemplate a settlement between a plaintiff and at least one of several defendants in a case;[6] not a settlement of a cross-claim between defendants. *See State Farm Fire and Casualty Company v. Fullerton,* 118 F.3d 374 (5th Cir.1997); *Robertson v. White,* 81 F.3d 752 (8th Cir.1996); *In re Mosher,* 25 F.3d 397 (6th Cir.1994); *Langer v. Monarch Life Insurance Company,* 966 F.2d 786 (3rd Cir. 1992); *Hoops v. Watermelon City Trucking, Inc.,* 846 F.2d 637 (10th Cir.1988); *Quad/Graphics, Inc. v. Fass,* 724 F.2d 1230 (7th Cir.1983); *d'Hedouville v. Pioneer Hotel Company,* 552 F.2d 886 (9th Cir.1977); *Ratterree v. Bartlett,* 238 Kan. 11, 707 P.2d 1063 (1985); *Diaz v. Sears, Roebuck & Co.,* 475 So.2d 932 (Fla.Dist.Ct.App.1985); *Torres v. Union Pacific R. Co.,* 157 Cal.App.3d 499, 203 Cal.Rptr. 825 (1984); *General Motors Corp. v. Lahocki,* 286 Md. 714, 410 A.2d 1039 (1980); *Lubbock Mfg. Co. v. Perez,* 591 S.W.2d 907 (Tex.Civ.App.1979); *Frey v. Snelgrove,* 269 N.W.2d 918 (Minn.1978); *Bedford School District v. Caron Construction Co.,* 116 N.H. 800, 367 A.2d 1051 (1976); *Degen v. Bayman,* 86 S.D. 598, 200 N.W.2d 134 (1972); *City of Tucson v. Gallagher,* 14 Ariz.App. 385, 483 P.2d 798 (1971); *Lum v. Stinnett,* 87 Nev. 402, 488 P.2d 347 (1971). This Court has not previously addressed the issue of defendants failing to disclose, upon request, the settlement of a cross-claim. Likewise, there appears to be no case law in the country which addresses this specific issue.

■ However, we believe the general settlement disclosure requirement recognized in *Vapor Corp.* should be logically extended to cover agreements between defendants who settle their cross-claims. The Court's conclusion is based on several reasons. First, syllabus point 1 of *Vapor Corp.* addresses not

---

5. We qualified the general disclosure requirement of *Vapor Corp.* in syllabus point 5 of *Reager v. Anderson,* 179 W.Va. 691, 371 S.E.2d 619 (1988):

> Disclosure to the jury of the general nature of a "Mary Carter" settlement agreement is not required in each case; such disclosure lies within the sound discretion of the trial court. Where the "Mary Carter" agreement is not reached until after all or most of the evidence has been presented, and the settling defendant during closing argument and examination does not indicate to the jury a realignment of loyalties so as to prejudice the nonsettling defendant(s), it is within the sound discretion of the

trial court to refuse to disclose the general nature of the "Mary Carter" agreement to the jury.

6. For other cases authored by this Court which discuss Mary Carter agreements, *see State ex rel. Ward v. Hill,* 200 W.Va. 270, 489 S.E.2d 24 (1997); *Mackey v. Irisari,* 191 W.Va. 355, 445 S.E.2d 742 (1994); *Board of Educ. of McDowell County v. Zando, Martin & Milstead, Inc.,* 182 W.Va. 597, 390 S.E.2d 796 (1990); *Morris v. Boppana,* 182 W.Va., 248, 387 S.E.2d 302 (1989); *Riggle v. Allied Chemical Corp.,* 180 W.Va. 561, 378 S.E.2d 282 (1989).

only "Mary Carter" agreements, but other *related settlement agreements.* (Emphasis added). Therefore, *Vapor Corp.* contemplates that a prompt disclosure of settlement agreements in general is required to both the court and opposing counsel once the settlement is made. Additionally, the analysis in *Vapor Corp.* for disclosure to the court and opposing counsel of "Mary Carter" agreements is the same analysis for a disclosure of any other type of settlement agreement. Settlements frequently tend to realign the loyalty of the parties. Settlement among parties may change trial tactics. As a result of the potential impact of settlements, full and complete disclosure of the settlement terms is necessary for the court and counsel to determine whether the agreement is valid, and if so, what measures should be taken to ensure that the non-settling party or parties will not be prejudice. *See Vapor Corp.* 173 W.Va. at 773, 320 S.E.2d at 348. Therefore, we hold that consistent with other types of settlement agreements, when defendants settle a cross-claim between them the settlement agreement should be promptly disclosed to the court and all other parties in the litigation.

■ In the instant proceeding, Mrs. Gum was not informed of the settlement agreement between Baker and Ayr until two weeks after the circuit court signed the agreed order. Under our holding today, Mrs. Gum and the court should have been informed of the settlement immediately after Baker and Ayr entered the agreement. This did not occur. Compounding the situation is the fact that Mr. Janelle failed to disclose the agreement when the court specifically made an inquiry into settlements.[7]

The circuit court found that the failure to disclose the settlement agreement before the jury rendered its verdict was not prejudicial to Mrs. Gum. The circuit court reasoned that because Ayr was named in the complaint as the owner of the truck driven by Baker their positions were identical. Therefore, the Court reasoned that the outcome of the trial would have resulted in the same verdict.

Mrs. Gum alleges that failure to disclose the settlement agreement materially impacted the manner in which she presented her case. Mrs. Gum states that she "made a tactical decision not to call Ayr as a witness and not to question Baker about the cross-claim." Had Mrs. Gum known that the cross-claim between Baker and Ayr was resolved, she "might have been inclined to further explore the relationship between Ayr and Baker." Also, Mrs. Gum contends that if she was made aware of the settlement agreement she would "have vigorously argued to the [trial] court that the jury had the right to know that the driver of the truck had settled with the owner of the truck."

Mrs. Gum's trial tactics may have been different had she been made aware of the settlement agreement. Whether a change in trial tactics would have resulted in a different verdict, based upon the facts of this case, is speculative. The trial court was present during the trial and observed the demeanor of the witnesses and other nuances of a trial that a record simply cannot convey. *See Michael D.C. v. Wanda L.C.,* 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). In taking all of the unrecordable aspects of the trial and the recorded evidentiary facts together, the trial court concluded that the verdict would have been the same had Mrs. Gum received timely knowledge of the settlement agreement.[8] Based upon the record before us, we find no basis to reverse

---

7. During oral argument before this Court, Mr. Janelle indicated he did not believe it was necessary to disclose to the trial court the agreement between defendants Baker and Ayr. Additionally, Mr. Janelle stated that his failure to disclose was an honest mistake.

8. The record demonstrates that there was clearly a dispute between the experts regarding whether the accident caused Mr. Gum's death or whether the heart attack which occurred five hours later caused his death. The jury determined that the cause of death was not the accident. Therefore, the fact that the jury was not apprised of the settlement would have no impact on the jury's determination of the cause of death.

the circuit court's ruling denying a new trial on the grounds that disclosure of the settlement agreement may have affected the jury verdict.[9]

## B. *Failure to Disclose the Settlement Agreement:*
### *Its Ethical Considerations*

We have deferred to the trial court's ruling on the question of the prejudicial trial impact of failing to timely disclose the settlement agreement. This, however, does not end the Court's inquiry. Mrs. Gum also contends that a new trial should have been granted because of the ethical considerations of Mr. Janelle's silence when the court directly inquired regarding any settlement.[10] The ethical concerns will be addressed in two ways: (1) the general duty of candor and (2) the rules of professional conduct.

### 1. *The General Duty of Candor*

Mr. Janelle's silence implicated the general duty of candor all attorneys have as officers of the court.[11] "The duty of candor to the tribunal is a widely recognized one within the legal profession[.]" *United States v. Shaffer Equipment Co. (Shaffer II)*, 158 F.R.D. 80, 87 (S.D.W.Va.1994).[12] In *Peterson v. BMI Refractories, Inc.*, 938 F.Supp. 767, 773 (N.D.Ala.1996) the court stated that "[a]ll attorneys, as 'officers of the court,' owe duties of complete candor and primary loyalty to the court before which they practice.... This concept is as old as common law jurisprudence itself. In England, the first licensed practitioners were called 'Servants at law of our lord, the King' and were absolutely forbidden to 'decei[ve] or beguile the Court.'" In *Matter of J.B.K.*, 931 S.W.2d 581, 583 (Tex.App.El Paso 1996) it was noted that "[t]he conduct of a lawyer should be characterized at all times by honesty, candor, and fairness. In fulfilling his or her primary duty to a client, a lawyer must be ever mindful of the profession's broader duty to the legal system." *See* 1 Geoffrey C.

9. The record before this Court contains no documents reflecting the number of jury strikes granted to the defendants. The number of strikes awarded to Baker and Ayr may have been altered had the court and opposing counsel been advised of the settlement agreement between defendants Baker and Ayr. Had the record contained such evidence a new trial may have been warranted.

10. Mrs. Gum also argued that a new trial should have been granted as a result of the trial court's denial of her post-trial motion for discovery. The post-trial discovery request was for the purpose of ascertaining the terms of the settlement agreement. It was indicated by Mr. Janelle during oral argument that the agreed order contained the total agreement between Baker and Ayr. That is, Baker confessed judgment to Ayr's cross-claim and agreed to indemnify Ayr for any judgment rendered against Ayr. In view of our determination that failure to disclose the settlement agreement did not prejudice the outcome of the trial, we find that the trial court did not abuse its discretion in denying the post-trial motion for discovery. *See B.F. Specialty Co. v. Charles M. Sledd Co.*, 197 W.Va. 463, 465, 475 S.E.2d 555, 557 (1996) ("A trial court is permitted broad discretion in the control and management of discovery, and it is only for an abuse of discretion amounting to an injustice that we will interfere with the exercise of that discretion.").

11. This Court may address the general duty of candor independent of any possible violation of the Rules of Professional Conduct by Mr. Janelle. *See United States v. Shaffer Equipment Co. (Shaffer I)*, 11 F.3d 450 (4th Cir.1993) (recognizing authority of district court to examine improper conduct of attorneys under general duty of candor, as a matter independent of West Virginia Rules of Professional Conduct).

12. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092 (11th Cir.1994) (every lawyer has a duty of candor to the tribunal); *Pinkham v. Sara Lee Corp.*, 983 F.2d 824 (8th Cir.1992) (attorneys have responsibility to present record with accuracy and candor); *Beam v. IPCO Corp.*, 838 F.2d 242 (7th Cir.1988) (lawyers have duty of candor to tribunal); *United States v. Associated Convalescent Enterprises, Inc.*, 766 F.2d 1342 (9th Cir.1985) (attorney has duty of good faith and candor in dealing with the judiciary); *Hirschkop v. Snead*, 594 F.2d 356 (4th Cir.1979) (attorneys owe complete candor when dealing with judiciary); *Basso v. Utah Power and Light Co.*, 495 F.2d 906 (10th Cir.1974) (complete candor owed by lawyers to judiciary); *Attorney Grievance Com'n v. Myers*, 333 Md. 440, 635 A.2d 1315 (1994) (candor and truthfulness are two most important moral character traits of a lawyer); *Matter of Norton*, 128 N.J. 520, 608 A.2d 328 (1992) (every lawyer has duty to be candid and forthright with court); *City of Chicago v. Higginbottom*, 219 Ill.App.3d 602, 162 Ill.Dec. 76, 579 N.E.2d 890 (1 Dist. 1991) (lawyer has duty of good faith and candor with judiciary); *Hays v. Johnson*, 566 So.2d 260 (Fla.App. 5 Dist.1990) (attorney bound to serve ends of justice with candor to all); *Girkin v. Cook*, 518 P.2d 45 (Okl.1973) (duty of candor required counsel to inform court of subsequent events in case).

Hazard, Jr. and W. William Hodes, *The Law of Lawyering* 575–76 (1990) ("[W]here there is danger that the tribunal will be misled, a litigating lawyer must forsake his client's immediate and narrow interests in favor of the interests of the administration of justice itself."); *Jenkins v. McCoy*, 882 F.Supp. 549, 558 (S.D.W.Va.1995) (" 'The [judicial] system can provide no harbor for clever devices to divert the search, mislead opposing counsel or the court, or cover up that which is necessary for justice in the end.' " Quoting *United States v. Shaffer Equipment Co. (Shaffer I)*, 11 F.3d 450, 457–58 (4th Cir.1993)).

It does not appear that any of our prior cases have discussed the general duty of candor. We hold, however, that the general duty of candor is recognized in West Virginia and attorneys engaged in the practice of law in this State have a general duty of candor to the courts of this State. In having recognized the general duty of candor, there are three factors which this Court must address concerning the duty: (a) the requirements of the general duty of candor, (b) determining when the general duty of candor is violated, and (c) sanctions for violating the general duty of candor. We address each matter seriatim below.

### (a) *The requirements of the general duty of candor.*

■■■■ At the heart of the general duty of candor is an attorney's " 'continuing duty to inform the Court of any development which may conceivably affect the outcome' of the litigation." *Tiverton Board of License Com'rs v. Pastore*, 469 U.S. 238, 240, 105 S.Ct. 685, 686, 83 L.Ed.2d 618 (1985), quoting *Fusari v. Steinberg*, 419 U.S. 379, 391, 95 S.Ct. 533, 540, 42 L.Ed.2d 521 (1975). See *St. Charles Parish School Bd. v. GAF Corp.*, 512 So.2d 1165 (La.1987) (indicating counsel have continuing duty inform court of any development that might affect outcome of case); *Matter of Stein*, 97 N.J. 550, 483 A.2d 109 (1984) (recognizing attorney has continuing duty to apprise court of all relevant facts). "The general duty of candor and truth thus takes its shape from the larger object of preserving the integrity of the judicial system." *Shaffer I*, 11 F.3d at 458. Accordingly, "[c]ounsel may not, knowingly or otherwise, engage in conduct which may reasonably be perceived as misleading either to the court or to opposing counsel." [13] *State v. Guthman*, 619 A.2d 1175, 1179 (Del. Supr.1993). See *Griffis v. S.S. Kresge Co.*, 150 Cal.App.3d 491, 499, 197 Cal.Rptr. 771, 777 (1984) ("The concealment of material information within the attorney's knowledge as effectively misleads a judge as does an overt false statement."). A review of the cases throughout the country clearly illustrate that the general duty of candor may be thwarted through an attorney's silence.[14]

---

**13.** It was properly noted in *Lewin v. Anselmo*, 56 Cal.App.4th 694, 701, 65 Cal.Rptr.2d 682, 686 (1997) that "[a]n attorney should not deceive opposing counsel." The court in *Monroe v. State Bar of California*, 55 Cal.2d 145, 152, 10 Cal. Rptr. 257, 261, 358 P.2d 529, 533, (1961) held that "[i]ntentionally deceiving opposing counsel is ground for disciplinary action." See *Itel Containers Intern. Corp. v. Puerto Rico Marine Management, Inc.*, 108 F.R.D. 96 (D.N.J.1985) (duty imposed on counsel to deal fairly with opposing counsel); *Southgate Bank & Trust Co. v. May*, 696 S.W.2d 515 (Mo.App.1985) (counsel should not mislead or deceive another attorney during negotiations); *Ruggiero v. Attore*, 51 Ill.App.3d 139, 9 Ill.Dec. 213, 366 N.E.2d 470 (1 Dist.1977) (plaintiff counsel had duty to inform successor counsel for defendant of pending discovery orders).

**14.** "There are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation." *American Intern. Adjustment Co. v. Galvin*, 86 F.3d 1455, 1460 (7th Cir.1996). See *Hamilton v. Harper*, 185 W.Va. 51, 53, 404 S.E.2d 540, 544 (1991) ("[M]aking a false statement includes the failure to make a statement in circumstances in which nondisclosure is equivalent to making such a statement.") (citation and internal quotation marks omitted); *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 840 (Bankr.C.D.Cal.1991) ("An attorney's duty goes beyond not merely putting false evidence before the court; the duty is greater—the lawyer has a duty to not make misrepresentations to the court." Citing *In re Disciplinary Action David L. Curl*, 803 F.2d 1004, 1005–06 (9th Cir.1986)). Selective omission of relevant information, therefore, "exceeds the bounds of zealous advocacy and is wholly inappropriate." *Montgomery v. City of Chicago*, 763 F.Supp. 301, 307 (N.D.Ill. 1991). See *Barrett v. Mississippi Bar*, 648 So.2d 1154, 1158 (Miss.1995) (" 'An attorney in his dealings with the court should always make full disclosures to the court and should never seek to mislead the court into unnecessary or unwarranted action by any artifice or concealment.' " Quoting *State v. Weinstein*, 411 S.W.2d 267 (Mo.

In fact, in *Shaffer I* the Fourth Circuit discussed at length the general duty of candor lawyers owe to courts. The opinion held:

> Our adversary system for the resolution of disputes rests on the unshakable foundation that truth is the object of the system's process which is designed for the purpose of dispensing justice. However, because no one has an exclusive insight into truth, the process depends on the adversarial presentation of evidence, precedent and custom, and argument to reasoned conclusions—all directed with unwavering effort to what, in good faith, is believed to be true on matters material to the disposition. Even the slightest accommodation of deceit or a lack of candor in any material respect quickly erodes the validity of the process. As soon as the process falters in that respect, the people are then justified in abandoning support for the system in favor of one where honesty is preeminent.
>
> While no one would want to disagree with these generalities about the obvious, it is important to reaffirm, on a general basis, the principle that lawyers, who serve as officers of the court, have the first line task of assuring the integrity of the process. Each lawyer undoubtedly has an important duty of confidentiality to his client and must surely advocate his client's position vigorously, but only if it is truth which the client seeks to advance. The system can provide no harbor for clever devices to divert the search, mislead opposing counsel or the court, or cover up that which is necessary for justice in the end. It is without note, therefore, that we recognize that the lawyer's duties to maintain the confidences of a client and advocate vigorously are trumped ultimately by a duty to guard against the corruption that justice will be dispensed on an act of deceit.

*Shaffer I*, 11 F.3d at 457–458.

■ We have determined from the decisions that have addressed the issue, that the general duty of candor requires attorneys be honest and forthright with courts; that attorneys refrain from deceiving or misleading courts either through direct representations or through silence; and this duty is owed to courts during all aspects of litigation.

### (b) *Determining when the duty of candor is violated.*

■ In the instant proceeding neither the trial court's order denying post-trial motions, nor the post-trial hearing addressed the issue of Mr. Janelle's silence in relation to his general duty of candor to the court. However, this Court has the inherent power to address the issue and determine whether as a matter of law Mr. Janelle's conduct violated the general duty of candor. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S.Ct. 2123, 2132–33, 115 L.Ed.2d 27 (1991) (reviewing court has inherent authority to address impropriety by counsel).

To aid in our analysis we look to the case of *Spence–Parker v. Maryland Ins. Group*, 937 F.Supp. 551 (E.D.Va.1996). *Spence–Parker* involved a collateral attack on a previously entered consent judgment. The collateral attack was made by the insurer defendant in the case. The plaintiff and insured defendant entered into settlement negotiations without informing the insurer defendant. Eventually an agreement was reached and the insurer defendant had to pay. The original trial judge in the case entered a consent judgment order based upon the settlement. The insurer defendant sought to overturn the consent judgment on two grounds: (1) the plaintiff and insured defendant failed to inform the trial court that the insurer defendant was not a part of the settlement negotiations and (2) the plaintiff and insured defendant failed to inform the trial judge "that the settlement they asked the Court to approve was not the product of arms-length negotiation in an

App.1967)); *Thurman v. State*, 859 S.W.2d 250, 253 (Mo.App.1993) (" 'The lawyer cannot properly engage in advocacy calculated to mislead or deceive the court, and no lawyer should do so.' " Quoting *State v. Gates*, 466 S.W.2d 681, 683 (Mo.1971)); *Williams v. Superior Court*, 46 Cal.

App.4th 320, 330, 53 Cal.Rptr.2d 832, 838 (1996) (" 'Honesty in dealing with the courts is of paramount importance, and misleading a judge is, regardless of motives, a serious offense.' " Quoting *Paine v. State Bar*, 14 Cal.2d 150, 154, 93 P.2d 103 (1939)).

adversarial setting." *Spence–Parker,* 937 F.Supp. at 562. The defendant contended that the conduct of the plaintiff and insured defendant in procuring the consent judgment amounted to fraud upon the court.

The court in *Spence–Parker* determined that the misrepresentation made by the attorneys to the original judge did not constitute actual fraud. Instead, the reviewing court analyzed the case on the basis of constructive fraud. "Constructive fraud does not require scienter or intent to mislead; it can be established whether the representation is innocently or knowingly made." *Spence–Parker,* 937 F.Supp. at 561. The court held that to establish constructive fraud it must be shown " '[i] that there was a material false representation, [ii] that the hearer believed it to be true, [iii] that it was meant to be acted on, [iv] that it was acted on, and [v] that damage was sustained.' " *Id.,* quoting *Webb v. Webb,* 16 Va.App. 486, 431 S.E.2d 55, 59 (1993).

The *Spence–Parker* court found the evidence supported the first element of constructive fraud. That is, the failure of the attorneys to inform the original trial court that no arms-length settlement occurred. "Their silence in this regard amounts to a misrepresentation because counsel were under a duty to disclose that fact to the Court." *Spence–Parker,* 937 F.Supp. at 562. The court then proceeded in quick fashion to find the remaining four elements:

> The other four elements are also established by undisputed, clear and convincing evidence in the record. Judge Bryan ... plainly believed the parties were adverse; the [record] makes clear that the Court had no reason to believe otherwise. Next, the representation was meant to induce action. The parties presented the proposed settlement to Judge Bryan asking him to enter judgment in accordance with the terms of that settlement. And the representation was acted on; Judge Bryan entered the requested judgment.... Finally, damage to the judicial process was sustained. Courts rely on· counsel to in-

form them fully as to all facts and circumstances that might materially affect the court in reaching a decision. Judge Bryan was not so informed in this instance.

*Id.* The court went on to set aside the consent judgment.

■ *Spence–Parker* is instructive for fashioning a test to determine whether the general duty of candor is violated through silence. The test used in *Spence–Parker* was that of constructive fraud.[15] We believe the elements of constructive fraud are useful in assessing whether an attorney's silence violated the duty of candor. Therefore, we hold that in determining whether an attorney's silence violated the general duty of candor owed to a court, it must be shown by a preponderance of the evidence that (1) the silence invoked a material misrepresentation, (2) the court believed the misrepresentation to be true, (3) the misrepresentation was meant to be acted upon, (4) the court acted upon the misrepresentation, and (5) that damage was sustained.

■ Applying this test to the instant matter we find as follows. First, Mr. Janelle's silence without doubt invoked a material misrepresentation. The question propounded by the circuit court, during the hearing, was whether or not any of the parties had entered into a settlement agreement. Counsel for the Dudleys responded that no settlement agreement existed between the defendants. Unbeknownst to the Dudleys' counsel, a settlement agreement between defendants Baker and Ayr had occurred. Mr. Janelle was fully aware of the fact, but remained silent. This silence created a misrepresentation. The misrepresentation was axiomatically material, insofar as a hearing was held based upon Mrs. Gum's specific motion to determine if any of the defendants had entered into a settlement agreement. Therefore, Mr. Janelle's silence invoked the material misrepresentation that no settlement agreement existed between any of the defendants. Second, the record is clear that the trial court believed as true the misrepresentation by Mr. Janelle. Third, Mr. Janelle

---

**15.** *See Semmens v. Semmens,* 77 Ill.App.3d 936, 33 Ill.Dec. 558, 396 N.E.2d 1282 (5 Dist.1979) (finding actual fraud in counsel's violation of the general duty of candor, in failing to inform trial court of an addendum inserted in a divorce property settlement).

intended for his misrepresentation to be acted upon. That is, he wanted the trial court to proceed with the jury trial. Fourth, the trial court acted upon the misrepresentation by proceeding with the trial without any further inquiry into the settlement. Finally, Mr. Janelle's misrepresentation damaged the judicial process.

We have determined that the evidence in the record establishes, by a preponderance, that Mr. Janelle violated the general duty of candor he owed to the trial court when he sat silently during the court's inquiry into any settlement agreements.

### (c) *Sanctions for violating the general duty of candor.*

Whenever a duty is imposed it must be accompanied by an appropriate remedy or sanction for a violation of the duty. Not to provide a remedy or sanction renders the duty meaningless. In the instant proceeding Mrs. Gum seeks a new trial as a result of Mr. Janelle's conduct. The question of a new trial or some other sanction for Mr. Janelle's violation of the general duty of candor must therefore be addressed by the Court.

In the case of *In re Dinova*, 212 B.R. 437 (2nd Cir.BAP 1997) a bankruptcy trustee was found to have violated the general duty of candor. The trustee filed a motion to dismiss the debtor's case without informing the debtor. The bankruptcy court dismissed the case without knowledge that the debtor had not been informed of the motion to dismiss the case. The Second Circuit held that "[t]he Trustee's filing of a misleading application with the Bankruptcy Court was a breach of his duty as an officer of the court. By not apprising the Bankruptcy Court of all relevant, material facts, the Trustee intentionally kept the Court in the dark. Such behavior is unacceptable." *Id.*, 212 B.R. at 447. As a sanction for the trustee's violation of the general duty of candor, the Second Circuit vacated the order dismissing the case.

*Shaffer I* involved a violation of the general duty of candor. In that case the federal district court found that government attor-

neys breached the general duty of candor owed to the court,[16] by failing to reveal that one of its witnesses had misrepresented his academic credentials in pending and other cases, and that civil and criminal investigations were pending against the witness. As a sanction for violating the general duty of candor the district court dismissed the case. The government appealed the dismissal.

The Fourth Circuit acknowledged in *Shaffer I* that the district court correctly found that the deceptive conduct of the government attorneys violated the general duty of candor. The Fourth Circuit had some concern, however, with the sanction imposed: "The district court, exercising its inherent power, imposed the most severe sanction and dismissed the government's … action against the defendants, concluding that dismissal with prejudice is 'the only sanction available that is commensurate with the duty of candor violations by counsel' and that dismissal not only penalizes the improper conduct but also deters others. The court added, 'Today we will send a message to all counsel who appear before this Court that the duty of candor will be upheld and preserved at all times[.]' " *Shaffer I*, 11 F.3d at 461.

It was recognized by the court in *Shaffer I* that "[u]nder the inherent power, a court may issue orders, punish for contempt, vacate judgments obtained by fraud, conduct investigations as necessary to exercise the power, bar persons from the courtroom, assess attorney's fees, and dismiss actions." *Shaffer I*, 11 F.3d at 462. However, it was said that "[s]ince orders dismissing actions are the most severe, such orders must be entered with the greatest caution." *Id. Shaffer I* further held:

[B]efore exercising the inherent power to dismiss a case, a court must consider the following factors: (1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that we seldom dismiss claims against blameless clients; (3) the prejudice to the judicial process and the administra-

---

**16.** *Shaffer I* involved government attorneys practicing in the state of West Virginia. The district court analyzed the conduct of the attorneys un-

der our Rules of Professional Conduct as well as under the general duty of candor.

tion of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest. *Id.* 11 F.3d at 462–63. The Fourth Circuit concluded that dismissal of the case as a sanction for violating the general duty of candor was too severe.[17] The case was reversed in part and remanded with directions to impose a sanction, which could include attorney's fees. *See Shaffer II,* 158 F.R.D. at 88 (requiring two government attorneys personally pay into a Superfund $4,500, as a sanction for violating the general duty of candor); *Maryland Nat. Bank v. Resolution Trust Corp.,* 895 F.Supp. 762 (D.Md.1995) (approving setting aside release and settlement agreement as sanction for violating general duty of candor); *Jenkins v. McCoy,* 882 F.Supp. 549 (S.D.W.Va.1995) (voiding contingent fee agreement as sanction for violating general duty of candor); *Blackwell v. Department of Offender Rehab.,* 807 F.2d 914 (11th Cir.1987) (upholding sanctions against attorney for violating general duty of candor); *Kath v. Western Media, Inc.,* 684 P.2d 98 (Wyo.1984) (setting aside settlement as sanction for violating general duty of candor).

■■■■ Our review of the cases involving sanctions for violating the general duty of candor, illustrate to us that there is no one sanction that fits all situations. The facts of each case must be considered to establish an appropriate sanction. We recognize that a violation of the general duty of candor may occur at any stage of the litigation process. As a result, the particular litigation stage at which the violation occurred will play a strong role in determining an appropriate sanction. Consistent with other courts in determining the imposition of a sanction for violating the general duty of candor, a court may consider but is not limited to: (1) ordering disclosure of information not disclosed, (2) granting a continuance, (3) holding coun-

sel in contempt, (4) precluding a party from calling a witness, offering evidence, or raising a defense, (5) dismissal of a case, (6) declaring a mistrial, (7) imposing attorney's fees and litigation costs, or (8) granting a new trial. A sanction imposed by a trial court for a violation of the general duty of candor is reviewed on appeal for an abuse of discretion.

In the instant proceeding the circuit court did not consider the general duty of candor, which we have determined was violated by Mr. Janelle. We leave for the circuit court on remand the task of imposing an appropriate sanction in this case in light of Mr. Janelle's violation of the general duty of candor. The circuit court should be guided by the sanctions outlined in this opinion, as well as any other type of sanction that the court deems appropriate. In considering the issue of a sanction, the circuit court should be mindful that the level of integrity of our judicial system is determined in large measure by the respect accorded the system by the public, litigants, and counsel.

### 2. *Rules of Professional Conduct*

The final matter that we discuss concerns Mr. Janelle's conduct vis-a-vis the West Virginia Rules of Professional Conduct (RPC). This Court adopted the RPC in an effort to ensure that an attorney not engage in deception or betrayal of the public or the courts. We made the following observations in *State v. Layton,* 189 W.Va. 470, 483–84, 432 S.E.2d 740, 753–54 (1993):

In adopting the Code of Professional Conduct, this Court has attempted to insure that an attorney's participation in legal matters occurs in a lawful way which promotes the ends of justice, within limits generally considered proper and moral by society as a whole. The Rules of Professional Conduct adopted by this Court recognize, as did the Supreme Court of the United States, that the elucidation of true testimony is a circumstance which pro-

---

17. *But see Aoude v. Mobil Oil Corp.,* 892 F.2d 1115, 1118 (1st Cir.1989) (recognizing the inherent power to dismiss where a party "defiles the judicial system in committing a fraud on the court"); *United States v. National Medical Enterprises, Inc.,* 792 F.2d 906 (9th Cir.1986) (recog-

nizing the inherent power to dismiss case for government's improper influencing of trial witnesses, but reversing dismissal order to have district court reconsider appropriate legal standard).

motes the fair administration of justice, and, conversely, the Rules implicitly recognize that the elucidation of false evidence frustrates the proper administration of justice.

The RPC appear to be implicated by Mr. Janelle's silence during the hearing when the court requested disclosure of any settlement agreements. Mrs. Gum argues strongly in her brief that several provisions in the RPC were violated by Mr. Janelle's conduct.[18] Mrs. Gum contends that she is entitled to a new trial on the grounds that Mr. Janelle's conduct violated the Rules of Professional Conduct. This Court noted in *First Nat. Bank in Marlinton v. Blackhurst*, 176 W.Va. 472, 478, 345 S.E.2d 567, 574 (1986) "that the usual remedy for a violation of the [Rules of Professional Conduct] is a disciplinary proceeding against the attorney and not a new trial." The Court's decision in *Blackhurst* is supported by the plain language contained in the Rules. In fact, the language contained in the PREAMBLE to the RPC clearly indicates that the purpose of the Rules "can be subverted when they are invoked by opposing parties as procedural weapons".[19] Therefore, when this Court believes a case before it presents the appearance of conduct that does not comport with RPC, we will comply with the Rule 8.3(a)[20] of the RPC and Canon 3D(2)[21] of the Code of Judicial Conduct, and refer the matter to the Office of Disciplinary Counsel (ODC) for its review. Accordingly, we direct the Clerk of the Supreme Court of Appeals to transmit a certified copy of this opinion to the ODC. *See AIG Hawaii Ins. Co., Inc. v. Bateman,* 82 Hawai'i 453, 923 P.2d 395 (1996) (referring possible ethical violations to its ODC); *Riesenecker v. Arkansas Best Freight Systems,* 110 N.M. 451, 796 P.2d 1147 (App.1990) (indicating its ODC will be informed by the appellate court when counsel fail to inform the appellate court of a settlement occurring during the appeal).

## IV.

## CONCLUSION

In view of the foregoing, we affirm that part of the circuit court's final order denying a new trial on the grounds that failure to disclose the settlement agreement did not prejudice the outcome of this particular case. We reverse the circuit court's final order insofar as it failed to consider Mr. Janelle's conduct as a violation of the general duty of candor. We therefore remand this case with directions that the circuit court impose an appropriate sanction in this case, due to Mr. Janelle's violation of the general duty of candor.

Affirmed in part; Reversed in part; and Remanded with directions.

---

18. In fulfilling our obligation to refer this issue for investigation by ODC, we must refrain from prejudging the conduct as an actual violation of any of the provisions of RPC.

19. We note that "[i]n some cases, when such a violation prevents a fair trial, a new trial may be appropriate". *Blackhurst,* 176 W.Va. at 478, 345 S.E.2d at 574. Citing *Matter of Richard's Estate,* 4 Kan.App.2d 26, 602 P.2d 122 (1979). Although we do not, at this time, reach the merits of whether Mr. Janelle's conduct actually violated the RPC, clearly his conduct did not prejudice the outcome of the trial. As previously noted, the jury determined that the cause of death was a heart attack and not the accident. Therefore, a new trial based *solely* upon alleged violations of the RPC is not warranted in this case. Of course, this fact does not preclude the trial court from considering a new trial as a sanction for Mr. Janelle's violation of the general duty of candor.

20. Rule 8.3(a) provides:

(a) A lawyer having knowledge that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, shall inform the appropriate professional authority.

21. Canon 3D(2) provides:

(2) A judge who receives information indicating a substantial likelihood that a lawyer has committed a violation of the Rules of Professional Conduct should take appropriate action. A judge having knowledge that a lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects shall inform the appropriate authority.