# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**In Re: D.N.**

**No. 14-0465** (Tyler County 13-JA-15)

**FILED**

September 22, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father, by counsel John E. Gainer, appeals the Circuit Court of Tyler County's April 28, 2014, order terminating his parental rights to D.N. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee A. Niezgoda, filed its response in support of the circuit court's order.[1] The child's mother, by counsel Carolyn G. Flannery, filed a response supporting the circuit court's order. On appeal, petitioner alleges that the circuit court erred in terminating his parental rights upon the erroneous findings that there was no reasonable likelihood the conditions of abuse and neglect could be substantially corrected and that the DHHR made reasonable efforts to prevent removal and preserve the family.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On November 14, 2013, the DHHR received a referral that the two-year-old child, D.N., had multiple bruises on her face. That same day, a DHHR employee went to petitioner's home to

---

[1]On August 25, 2014, the Court issued an amended scheduling order directing the child's guardian ad litem, Shane M. Mallet, to file a brief in response to the petition for appeal in compliance with Rule 11(h) of the West Virginia Rules of Appellate Procedure. The order required the brief to be filed on or before August 27, 2014. To date, the Court has not received a response from the guardian ad litem. Due to the guardian ad litem's failure to comply with the West Virginia Rules of Appellate Procedure and this Court's prior orders, we find a referral of this matter to the Office of Disciplinary Counsel to be warranted. "When this Court believes a case before it presents the appearance of conduct that does not comport with the West Virginia Rules of Professional Conduct (RCP), we will comply with Rule 8.3(a) of the RPC and Canon 3D(2) of the Code of Judicial Conduct, and refer the matter to the Office of Disciplinary Counsel for its review and appropriate action." Syl. Pt. 8, *Gum v. Dudley*, 202 W.Va. 477, 505 S.E.2d 391 (1997). Accordingly, we direct the Clerk of the Supreme Court of Appeals to transmit a certified copy of this Opinion to the Office of Disciplinary Counsel ("ODC"). To be clear, by making this referral we express no opinion as to whether disciplinary proceedings ultimately should be initiated or how such proceedings should be resolved. It is for ODC to determine whether, and/or how, to proceed after it has reviewed this matter.

investigate but was told the child was not home. The employee asked that petitioner call him the following day so he could return when D.N. was present. After not receiving that call, the employee returned to the home on November 19, 2013, and observed two small bruises on the left side of the child's face. Petitioner claimed this was a result of the child falling from her crib and told the employee he removed part of the crib to ensure the child did not fall again. Finding this explanation acceptable, the employee took no action to initiate a case.

On November 27, 2013, petitioner came to the DHHR office with the child to apply for economic benefits. At that time, the child was observed to have bruising on her back and both sides of her face, as well as a split lip. Child Protective Services ("CPS") was notified, and a CPS worker asked petitioner to take the child to the hospital. Petitioner reiterated that the bruises on the child's face were the result of falling out of her crib and that the other bruises were the result of the child falling through the furnace vent. Petitioner stated he had already taken the child to a Dr. Ekanem for the injuries, but when the CPS worker contacted the doctor's office, the staff told her that D.N. had never been there and was not one of Dr. Ekanem's patients. Although he was reluctant, petitioner did take the child to the hospital upon a CPS worker's insistence and was accompanied by that worker. At the hospital, the physician diagnosed the injuries as a result of blunt force trauma, but could not dispute petitioner's explanations. Therefore, the DHHR did not open a case at that time.

On December 5, 2013, the child was seen at the local emergency room with abdominal pain, a broken hand, and multiple bruises to the face, abdomen, and back, all at different stages of healing. A scan of the child's abdomen revealed a grade four spleen laceration, which the physician indicated was incredibly severe and resulted in great blood loss into the body cavity. Petitioner indicated that the child received this injury nine days prior when she fell into a heating grate, which also caused the bruising to her face. Due to the severity of the injuries, the child was transported by helicopter to Ruby Memorial Hospital.

The next day, the DHHR filed an abuse and neglect petition against petitioner and his live-in girlfriend. The child's biological mother was initially named as a respondent, but was later added as a co-petitioner, *sua sponte*, after it was evident she had no access to the child during the time period in which the abuse occurred. In February of 2014, petitioner was indicted on criminal charges of child abuse resulting in bodily injury, malicious assault, and domestic battery as a result of D.N.'s injuries. In May of 2014, the circuit court held an adjudicatory hearing, during which petitioner's girlfriend, who had recently broken up with petitioner, testified about his abusive treatment of her as well as D.N. Specifically, she testified that she witnessed petitioner kick the child with a pair of steel-toed boots and that petitioner "back-handed" the child across the face. According to her testimony, this incident caused the injuries that led to D.N.'s emergency room visit on December 5, 2013. The girlfriend testified that she did not report petitioner at the time because she was afraid of him, but that once she moved out of state, she felt comfortable testifying against him. Petitioner testified and never admitted to causing the child's injuries, though he did accuse his ex-girlfriend of abusing and injuring the child.

The circuit court thereafter held a dispositional hearing in April of 2014, and ultimately terminated petitioner's parental rights to the child. It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court's findings or in the termination of petitioner's parental rights.

To begin, the Court finds no merit in petitioner's allegation that the circuit court erred in finding that the DHHR "made reasonable efforts to preserve the family . . . and to prevent the placement or removing of the child from her home, and to make it possible for the child to safely return home." Petitioner argues that the DHHR made no efforts in this regard and, therefore, the circuit court's finding is unsupported by the evidence below. The Court disagrees, as the record clearly shows that petitioner was not entitled to any services in this matter due to his continued refusal to accept any culpability for the child's life-threatening injuries.

First, removal from the home was appropriate because neither petitioner nor his then girl-friend, the child's only caretakers, could provide any plausible explanation for the child's injuries, leaving the DHHR no option other than removal. Both medical providers who testified below stated that the child's injuries could not have happened in the manner petitioner suggested upon presenting the child for treatment. In fact, testimony established that a spleen laceration this severe is usually the result of blunt force trauma, a fall from a height of two stories or greater, or injury from a motor vehicle accident. Petitioner indicated that the child had fallen into a heater grate nine days prior to the emergency room visit, but, again, medical testimony below established that the child could not have survived this injury for nine days without medical treatment.

Pursuant to West Virginia Code § 49-6-3(a)(1) and (2), a circuit court may remove a child from the home after the filing of an abuse and neglect petition upon a showing that "[t]here exists imminent danger to the physical well-being of the child; and [t]here are no reasonably available alternatives to removal of the child, including, but not limited to, the provision of

3

medical, psychiatric, psychological or homemaking services in the child's present custody." Based on this code section, it is clear that because petitioner refused to acknowledge the manner in which the child was injured, the DHHR had no choice but to remove the child from the home initially.

Further, the Court finds that petitioner was not entitled to services designed to preserve the family due to the aggravated circumstances present in the home. Specifically, West Virginia Code § 49-6-5(a)(7)(A) states that the DHHR "is not required to make reasonable efforts to preserve the family if the court determines . . . [t]he parent has subjected the child . . . to aggravated circumstances which include, but are not limited to, abandonment, torture, chronic abuse and sexual abuse[.]" The record here is clear that petitioner either severely abused the child himself or allowed his then girlfriend to abuse the child. However, it is important to note that, despite presenting the child to physicians on two separate occasions, it was not until after the petition was filed and the West Virginia State Police began investigating the incident that petitioner blamed his girlfriend for the child's injuries. Even more important is the fact that the circuit court, the entity tasked with assessing witness credibility, found petitioner's testimony to be "untruthful" and stated that petitioner had "no credibility in his testimony regarding this child whatsoever." We have previously held that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). Based upon the circuit court's findings in regard to petitioner's credibility concerning the child's injuries and the manner in which she received them, it is clear that petitioner was not entitled to services designed to preserve the family.

Next, the circuit court did not err in finding there was no reasonable likelihood the conditions of abuse could be substantially corrected. Pursuant to West Virginia Code § 49-6-5(b)(2), a circumstance in which there is no reasonable likelihood that conditions of abuse and neglect can be substantially corrected includes one in which "[t]he abusing parent . . . [has] willfully refused or [is] presently unwilling to cooperate in the development of a reasonable family case plan designed to lead to the child's return to their care, custody and control[.]" The dispositional order in this matter was clear that the case plan below "was signed by all parties except [petitioner] . . . ." As such, it is clear that petitioner was unwilling to cooperate in the development of a reasonable family case plan, and the circuit court did not err in finding there was no reasonable likelihood that the conditions of abuse could be substantially corrected. Further, the evidence supports the circuit court's finding that termination of petitioner's parental rights was necessary for the child's welfare, especially in light of petitioner's continued refusal to accept responsibility for the abuse in the home. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights upon these findings.

Further, we have previously held that

"Parental rights may be terminated where there is clear and convincing evidence that the infant child has suffered extensive physical abuse while in the custody of his or her parents, and there is no reasonable likelihood that the conditions of abuse can be substantially corrected because the perpetrator of the

4

abuse has not been identified and the parents, even in the face of knowledge of the abuse, have taken no action to identify the abuser." Syllabus Point 3, *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993).

Syl. Pt. 4, *In re Harley C.*, 203 W.Va. 594, 509 S.E.2d 875 (1998). As noted above, petitioner attempted to blame his live-in girlfriend for the abuse perpetrated against D.N., but only after the instigation of the abuse and neglect proceedings and a parallel criminal investigation. Further, the circuit court found petitioner's testimony in this regard to be wholly lacking in credibility. As such, it is clear that there was no reasonable likelihood that the conditions of abuse could be substantially corrected, and the circuit court did not err in terminating petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court and its April 28, 2014 order is hereby affirmed.

Affirmed.

**ISSUED**: September 22, 2014

**CONCURRED IN BY**:

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II