◼ In the Matter of EIGHTH JUDICIAL DISTRICT ASBESTOS LITIGATION. NANCY A. REYNOLDS, Individually and as Executrix of DONALD H. REYNOLDS, Deceased, Respondent, v AMCHEM PRODUCTS INC. et al., Defendants, and GARLOCK SEALING TECHNOLOGIES LLC, Appellant. [822 NYS2d 216]—

Appeal from a judgment of the Supreme Court, Niagara County (James B. Kane, J.H.O.), entered February 25, 2005 in a personal injury action. The judgment, upon a jury verdict, awarded plaintiff the amount of $748,851 against defendant Garlock Sealing Technologies LLC.

It is hereby ordered that the judgment so appealed from be and the same hereby is affirmed without costs.

Memorandum: Plaintiffs commenced this action alleging that plaintiff husband (decedent), who died subsequent to entry of the judgment on appeal, developed an incurable disease as a result of his exposure to asbestos contained in products and materials manufactured and/or sold by numerous defendants, including Garlock Sealing Technologies LLC, formerly known as Garlock, Inc. (Garlock), and Niagara Insulations, Inc., formerly known as Niagara Asbestos Co., Inc. (Niagara). The jury awarded plaintiffs damages of approximately $3,750,000, and Garlock moved to set aside the verdict and for a new trial "in the interests of justice" on various grounds. Supreme Court granted the posttrial motion in part, setting aside the verdict with respect to the amount of damages awarded to plaintiff wife on her derivative cause of action and granting a new trial on that cause of action unless plaintiff wife stipulated to reduce the amount of damages awarded to her on that cause of action. We reject the contention of Garlock that the court erred in failing to set aside the verdict on the ground that Garlock and the jury were unaware that plaintiffs and Niagara had entered into a pretrial "narrow 'high-low' agreement" pursuant to which

Niagara's liability for damages would fall within a specified range. Absent evidence of collusion between Niagara and plaintiffs to the detriment of Garlock, the failure to disclose the high-low agreement does not mandate reversal (*see Mackey v Irisari*, 191 W Va 355, 363-364, 445 SE2d 742, 750-751 [1994]; *Ziegler v Wendel Poultry Servs.*, 67 Ohio St 3d 10, 17, 615 NE2d 1022, 1029-1030 [1993], *reh denied* 67 Ohio St 3d 1425, 616 NE2d 933 [1993], *overruled on other grounds by Fidelholtz v Peller*, 81 Ohio St 3d 197, 690 NE2d 502 [1998]; *Minpeco, S.A. v Hunt*, 127 FRD 460, 463-464 [1989]). Here, Niagara retained the incentive to minimize its own culpability and to magnify the culpability of Garlock and decedent, and thus Garlock "has failed to show how the [high-low] agreement realigned loyalties so as to prejudice [it]" (*Mackey*, 191 W Va at 364, 445 SE2d at 751; *see Newman v Ford Motor Co.*, 975 SW2d 147, 150-151 [Mo 1998]).

We further reject the contention of Garlock that plaintiffs failed to prove that any Garlock product contained asbestos and that the court therefore erred in denying its motion for a directed verdict at the close of plaintiffs' case. Plaintiffs were "not required to show the precise causes of [the] damages [sought], but [were required] only to show facts and conditions from which [Garlock's] liability [could] be reasonably inferred" (*Matter of New York City Asbestos Litig.*, 7 AD3d 285, 286 [2004]). Here, decedent testified that he was exposed to various products containing asbestos that bore the name "Garlock," and plaintiffs' expert opined with a reasonable degree of medical certainty that Garlock's products were a substantial cause of the disease developed by decedent.

We further conclude that the court did not abuse its discretion in admitting in evidence a videotape depicting asbestos dust production caused by gasket abrasion. The videotape was prepared by one of plaintiffs' experts, and plaintiffs presented testimony that the demonstration of the asbestos dust production depicted in the videotape was substantially the same as the actual occurrence of the dust production (*see Blanchard v Whitlark*, 286 AD2d 925, 926-927 [2001]). Moreover, "testimony concerning the demonstration[ ] was subject to cross-examination and subsequent expert rebuttal testimony, both of which criticized the demonstration[ ] and minimized [its] significance" as well as the methodology of the expert who prepared the videotape (*id.* at 927; *see Goldner v Kemper Ins. Co.*, 152 AD2d 936, 937 [1989], *lv denied* 75 NY2d 704 [1990]). We note in addition that Garlock did not establish that the methodology of plaintiffs' expert in preparing the videotape was novel, unreli-

able or generally unaccepted in the relevant scientific community (*see Seventh Jud. Dist. Asbestos Litig.*, 9 Misc 3d 306, 311-312 [2005]).

We have reviewed Garlock's remaining contentions and conclude that they are without merit.

All concur except Hayes, J., who is not participating, and Kehoe, J.P., who dissents and votes to reverse in accordance with the following memorandum.

Kehoe, J.P. (dissenting). I respectfully dissent. I would reverse the judgment and grant the motion of defendant Garlock Sealing Technologies LLC, formerly known as Garlock, Inc. (Garlock), to set aside the verdict and grant a new trial based on Supreme Court's failure to disclose to Garlock until after the jury had returned its verdict the existence and terms of a "narrow 'high-low' agreement" of settlement entered into between plaintiffs and defendant Niagara Insulations, Inc., formerly known as Niagara Asbestos Co., Inc. (Niagara), the other remaining defendant in the action. A week or two before trial, plaintiffs and Niagara entered into the high-low agreement providing for a minimum recovery by plaintiffs against Niagara of $155,000 and a maximum recovery of $185,000. Although the court was apprised of the existence and terms of the high-low agreement, the court did not inform Garlock or the jury of the terms of the agreement or even of its existence. The jury returned a verdict apportioning liability 60% to Garlock and 40% to Niagara and awarding plaintiffs damages of $3.75 million, which thereafter were reduced by the court to $2.7 million. The court ultimately granted judgment against Garlock in the amount of $1.155 million. As noted by the majority, plaintiff husband died subsequent to the entry of the judgment on appeal.

Pursuant to Code of Judicial Conduct Canon 3 (B) (4) and (6) (22 NYCRR 100.3 [B] [4], [6]), a judge must perform the duties of his or her office impartially and shall not initiate, permit or consider ex parte communications concerning a pending proceeding, with limited exceptions that do not concern settlement discussions. Moreover, even with respect to permissible ex parte communications concerning scheduling or other administrative matters "that do not affect a substantial right of any party," the judge must "reasonably believe[ ] that no party will gain a procedural or tactical advantage as a result of the ex parte communication, and the judge, insofar as practical and appropriate, [must provide] for prompt notification of other parties or their lawyers of the substance of the ex parte communication and allow[ ] an opportunity to respond" (Code of Judicial

Conduct Canon 3 [B] [6] [a] [22 NYCRR 100.3 (B) (6) (a)]). Here, the record establishes that the court failed to give the required "prompt notification" to Garlock of the ex parte communication and plaintiffs and Niagara thus actually or potentially gained a "procedural or tactical advantage" over Garlock (*id.*).

I further conclude that it was unfair to Garlock and prejudicial to its substantive rights and interests to be compelled to participate in the trial without knowledge of the critical procedural and substantive fact that plaintiffs had reached a high-low agreement with Niagara. Cases from other jurisdictions that have addressed this issue hold or strongly suggest that a nonsettling party is entitled to pretrial notice of the existence of a settlement agreement between other parties who nonetheless continue to participate in the case in such a way that the true "alignment of interests in the litigation is not what it appears to be" (*Hashem v Les Stanford Oldsmobile*, 266 Mich App 61, 83, 697 NW2d 558, 571 [2005], *lv dismissed* 711 NW2d 375 [2006] [internal quotation marks omitted]; *see Newman v Ford Motor Co.*, 975 SW2d 147, 149-151 [Mo 1998]; *Ratterree v Bartlett*, 238 Kan 11, 24-30, 707 P2d 1063, 1073-1076 [1985]; *General Motors Corp. v Lahocki*, 286 Md 714, 720-730, 410 A2d 1039, 1042-1047 [1980]; *see also Gum v Dudley*, 202 W Va 477, 482-484, 505 SE2d 391, 396-398 [1997]; *Garrett v Mohammed*, 686 So 2d 629, 630 [Fla 1996], *review denied* 697 So 2d 510 [Fla 1997]; *Slusher v Ospital*, 777 P2d 437, 444 [Utah 1989]; *Hoops v Watermelon City Trucking, Inc.*, 846 F2d 637, 639-641 [1988] [applying Oklahoma law]). Indeed, those cases address the issue of whether a nonsettling party is entitled to have the jury apprised of the fact and terms of the high-low agreement or other settlement prior to the commencement of trial or as soon as such an agreement is reached during trial. The general rule set forth in the above cases is that the trial court must weigh the countervailing interests in question and fashion evidentiary rules and jury instructions that do not deprive either the settling or the nonsettling parties of a fair trial or subvert or distort the adversarial process (*see generally Hashem*, 266 Mich App at 84-86, 697 NW2d at 572-573). Thus, the cases indicate that a nonsettling party must be made privy to the fact and terms of the high-low agreement before or during trial where the agreement has the potential to skew the normal or otherwise expected or apparent interests of the parties to the litigation (*see Ratterree*, 238 Kan at 29, 707 P2d at 1076; *Gum*, 202 W Va at 482-484, 505 SE2d at 396-398; *Slusher*, 777 P2d at 444).

Because neither Garlock nor the jury was informed of the

high-low agreement between plaintiffs and Niagara, I am unable to conclude that the interests of Garlock in fundamental fairness and in the integrity of the adversarial process were not at least potentially affected by the court's withholding of the critical information (*see generally Meleo v Rochester Gas & Elec. Corp.*, 72 AD2d 83, 97-100 [1979], *lv dismissed* 49 NY2d 703 [1980]). It is of no moment that the agreement here was a high-low agreement as opposed to an agreement in a fixed amount and, in any event, the high-low limits and range here are so small in relation to the total worth of the claim that the agreement should be treated the same as an absolute settlement. Because Garlock lacked any contemporaneous knowledge of the high-low agreement, it was deprived of an opportunity to cross-examine witnesses for plaintiffs or Niagara with respect to the fact or terms of the agreement or any resultant financial interest or bias of a party or witness, or to argue the existence of collusion. Under the circumstances, it is unfair to require Garlock to demonstrate definitively that it was prejudiced by the nondisclosure of the high-low agreement. By the same token, the court could not have fairly and properly balanced the competing interests at stake, nor could it have made a reasoned determination of whether and to what extent to disclose the fact and terms of the high-low agreement to the jury, without first informing and receiving meaningful input from all of the parties whose interests were at stake and who thus might have been affected by that determination. It was impossible for Garlock to have any input into such a determination, nor indeed to insist that one be made, because Garlock was forced to proceed through trial in ignorance of the fact and terms of the high-low agreement. Therefore, I would reverse the judgment, grant Garlock's motion in its entirety, set aside the verdict in its entirety and grant a new trial, thereby affording the court the opportunity to determine, explicitly and on the record after obtaining meaningful input from all affected parties, whether and in what terms the jury should be apprised of the high-low agreement. Present—Kehoe, J.P., Gorski, Martoche, Pine and Hayes, JJ.