[872 NE2d 232, 840 NYS2d 546]

In the Matter of EIGHTH JUDICIAL DISTRICT ASBESTOS LITIGA-
TION. NANCY A. REYNOLDS, Individually and as Executrix of
DONALD H. REYNOLDS, Deceased, Respondent, v AMCHEM
PRODUCTS INC. et al., Defendants, and GARLOCK SEALING
TECHNOLOGIES LLC, Appellant.

Argued May 29, 2007; decided June 27, 2007

## POINTS OF COUNSEL

*Michael J. Hutter,* Albany, and *Osborne, Reed & Burke, LLP,* Rochester (*Bernadette Weaver-Catalana* of counsel), for appellant. I. The trial court committed reversible error by its failure to disclose to Garlock Sealing Technologies LLC that plaintiff and Niagara Insulations, Inc. had entered into a high-low settlement agreement prior to the commencement of the trial and by its condonation of the continuing concealment of the agreement from Garlock during the trial. (*McDonnell v Tello,* 8 Misc 3d 1003[A], 2005 NY Slip Op 50913[U]; *Williams v Niske,* 81 NY2d 437; *Vecchione v Amica Mut. Ins. Co.,* 274 AD2d 576; *Esposito v Wilson,* 308 AD2d 432; *Considar, Inc. v Equipment & Parts Export,* 271 AD2d 288; *Stiles v Batavia Atomic Horseshoes,* 174 AD2d 287, 81 NY2d 950, 1068; *Hoops v Watermelon City Trucking, Inc.,* 846 F2d 637; *Daniel v Penrod Drilling Co.,* 393 F Supp 1056; *Pretto v Leiwant,* 80 AD2d 579; *Meleo v Rochester Gas & Elec. Corp.,* 72 AD2d 83.) II. The trial court committed reversible error with respect to four of its evidentiary rulings, especially when these rulings are viewed in the context of the trial court's awareness of and Garlock Sealing Technologies LLC's ignorance of the high-low settlement agreement between plaintiffs and Niagara Insulations, Inc. (*Goldner v Kemper Ins. Co.,* 152 AD2d 936, 75 NY2d 704; *Fanelli v diLorenzo,* 187 AD2d 1004; *Cramer v Kuhns,* 213 AD2d 131; *Hoover v Durkee,* 212 AD2d 839; *Parker v Mobil Oil Corp.,* 7 NY3d 434, 8 NY3d 828; *People v Wesley,* 83 NY2d 417; *DeMeyer v Advantage Auto,* 9 Misc 3d 306; *People v Jeter,* 80 NY2d 818; *New York Laser Lign v Ausable Communications,* 42 AD2d 830; *Larkin v Nassau Elec. R.R. Co.,* 205 NY 267.)

*Lipsitz & Ponterio, LLC,* Buffalo (*John Ned Lipsitz, Nan L. Haynes* and *Anne E. Joynt* of counsel), for respondent. I. In the absence of an abuse of discretion, the lower courts' twin find-

ings of no collusion among the parties and no prejudice to the interests of Garlock Sealing Technologies LLC are not reviewable by this Court. (*Patron v Patron,* 40 NY2d 582; *Gutin v Mascali & Sons,* 11 NY2d 97; *Rivers v Garden Way,* 231 AD2d 50; *Micallef v Miehle Co., Div. of Miehle-Goss Dexter,* 39 NY2d 376; *Woodson v Mendon Leasing Corp.,* 100 NY2d 62; *Dunn v Eickhoff,* 35 NY2d 698; *Post v Brooklyn Hgts. R.R. Co.,* 195 NY 62.) II. This Court should reject Garlock Sealing Technologies LLC's invitation to adopt a new and unprecedented rule mandating disclosure of all confidential high-low agreements entered into in the presence of the trial judge. (*Meleo v Rochester Gas & Elec. Corp.,* 72 AD2d 83, 49 NY2d 703; *Williams v Niske,* 81 NY2d 437; *Stiles v Batavia Atomic Horseshoes,* 174 AD2d 287; *Considar, Inc. v Equipment & Parts Export,* 271 AD2d 288; *Hoops v Watermelon City Trucking, Inc.,* 846 F2d 637.) III. The Appellate Division's decision affirming the trial court's evidentiary rulings is not reviewable by the Court of Appeals because the lower courts properly exercised their discretion. (*Woodson v Mendon Leasing Corp.,* 100 NY2d 62; *Goldner v Kemper Ins. Co.,* 152 AD2d 936; *Blanchard v Whitlark,* 286 AD2d 925; *Norfleet v New York City Tr. Auth.,* 124 AD2d 715; *Panaro v General Motors Corp.,* 122 AD2d 784; *People v Wesley,* 83 NY2d 417; *Parker v Mobil Oil Corp.,* 8 NY3d 828; *DeMeyer v Advantage Auto,* 9 Misc 3d 306; *Lustenring v 98-100 Realty,* 1 AD3d 574; *Labella v Willis Seafood,* 296 AD2d 382.)

### OPINION OF THE COURT

PIGOTT, J.

In this multi-defendant action, Supreme Court erred in failing to disclose to all of the parties the existence of a high-low agreement between the plaintiffs and one of the defendants. Because this error prejudiced the determination of the rights and liabilities of the nonagreeing defendant at trial, a new trial on liability and damages is warranted.

### I.

Plaintiff Donald H. Reynolds[1] worked at the Ashland Oil Refinery in Tonawanda, New York from 1942 through 1987, and purportedly contracted mesothelioma from his exposure to asbestos while employed at that facility. Reynolds and his wife

---

1. Reynolds died after the entry of judgment. His wife, Nancy H. Reynolds, responds to this appeal both individually and as the executrix of his estate.

commenced this products liability/negligence action against various manufacturers and distributors of alleged asbestos-containing products used at the refinery. At the time of trial, only two defendants remained in the action: Garlock Sealing Technologies LLC, a manufacturer of gaskets and packaging, and Niagara Insulations, Inc., a distributor and installer of pipe covering insulation. It is alleged that Reynolds's exposure to asbestos in these defendants' products caused his disease.

Unbeknownst to Garlock, plaintiffs and Niagara entered into a high-low agreement two weeks before trial whereby it was agreed that Niagara's total liability would fall into a predetermined range. Specifically, if the jury's damage award against Niagara was $155,000 or less, Niagara would pay plaintiffs a minimum of $155,000, even if Niagara was found to be without fault; if the damage award against Niagara was more than $185,000, Niagara's liability would be capped at $185,000; if the damage award fell within the $155,000-$185,000 range, Niagara would pay plaintiffs the designated amount within that range. Thus, the high-low agreement differed in its effect from a settlement agreement in that Niagara had only $30,000 at stake and its continued participation at trial might have tactical importance for plaintiffs' claims against Garlock.[2]

Although Supreme Court was cognizant that plaintiffs and Niagara had entered into a high-low agreement, it was unaware of its terms or the amounts involved. Neither Supreme Court nor the agreeing parties advised Garlock of the agreement, and the matter proceeded to trial with Garlock and the jury unaware of its existence. The jury apportioned liability against Garlock and Niagara at 60% and 40%, respectively, and awarded plaintiffs damages in the amount of $3,750,000.

Having learned of the high-low agreement just days after the jury's verdict, Garlock moved to set aside the verdict and requested a new trial on various grounds. Relevant to this appeal, Garlock asserted that Niagara's continued participation in the trial after entering into the high-low agreement with plaintiffs was inherently unfair and prejudicial, and that Supreme Court's failure to disclose the existence of the agreement prejudiced Garlock and constituted reversible error. Supreme Court disagreed and entered judgment accordingly.

---

**2.** We note that the $30,000 range here, although not negligible, was certainly quite narrow. Indeed, the narrower the range, the more likely it seems that the parties' true motive for entering into a high-low agreement is to gain a tactical advantage at the expense of the nonagreeing defendant.

The Appellate Division, with one dissent, affirmed the judgment, holding that Supreme Court's failure to disclose the high-low agreement did not warrant reversal absent evidence of collusion between plaintiffs and Niagara to the detriment of Garlock, noting that Niagara never lost its incentive to magnify Garlock's liability or minimize its own (32 AD3d 1268, 1270 [4th Dept 2006]). We granted leave and now reverse.

## II.

At the outset, it should be noted that Supreme Court did an admirable job of brokering pretrial settlements of many claims in this complex litigation involving numerous defendants. That only two defendants remained in the litigation at the time of trial is a testament to Supreme Court's effectiveness in that regard. Nonetheless, we are constrained to agree with Garlock that the court's failure to disclose the existence of the high-low agreement rendered impossible a fair determination of Garlock's rights and liabilities.

A high-low agreement is a tool commonly used in litigation that guarantees the plaintiff a minimal recovery while concomitantly capping a defendant's potential exposure (see Faley and Alonso, Outside Counsel, *High-Low Agreements: Misunderstood Litigation Technique*, NYLJ, Mar. 27, 1998, at 1, col 1). Because the amount of damages a plaintiff is entitled to recover under a high-low agreement is usually fixed by the liability and damage determinations made by the factfinder, cases involving such agreements routinely go to trial. Unlike a typical settlement situation where the settling defendant is dismissed from the action, having "bought its peace," the defendant entering into a high-low agreement routinely remains in the action until its ultimate liability has been ascertained.

When entered into between a plaintiff and a defendant in a single-defendant trial, the high-low agreement affords the parties a means of tempering the significant risks associated with proceeding to trial. In a multi-defendant litigation, however, a high-low agreement between a plaintiff and fewer than all defendants has the potential of prejudicing the rights of the nonagreeing defendant if all parties are not apprised of the agreement's existence. Indeed, courts and commentators alike have acknowledged that secretive agreements may result in prejudice to the nonagreeing defendant at trial, distort the true adversarial nature of the litigation process, and cast a cloud over the judicial system (see generally *Slusher v Ospital*, 777

P2d 437, 440-441, 444 [Utah 1989]; *Ratterree v Bartlett*, 238 Kan 11, 29, 707 P2d 1063, 1076 [1985]; *General Motors Corp. v Lahocki*, 286 Md 714, 723-733, 410 A2d 1039, 1044-1048 [1980]; *Ward v Ochoa*, 284 So 2d 385, 387-388 [Fla 1973]; Hoenig, Products Liability, *Experts, Privileged Info; Secret 'High-Low' Agreements*, NYLJ, Oct. 11, 2006, at 3, col 1; Kaufman, Outside Counsel, *Risk Reduction Strategies in Personal Injury Litigation*, NYLJ, Jan. 21, 2000, at 1, col 1; Benedict, *It's a Mistake to Tolerate the Mary Carter Agreement*, 87 Colum L Rev 368 [1987]). The resulting prejudice warrants a new trial (*see Ratterree*, 238 Kan at 28-29, 707 P2d at 1075-1076; *General Motors Corp.*, 286 Md at 728, 410 A2d at 1046).

Here, Garlock was deprived of its right to a fair trial by Supreme Court's failure to disclose the existence of the high-low agreement. The agreement furnished plaintiffs with an incentive to maximize Garlock's liability while minimizing Niagara's, because the potential amount of damages plaintiffs could recover from Niagara was capped at $185,000. While it is not uncommon for a plaintiff to have a financial incentive to maximize the liability of one particular defendant in a multi-defendant action, Garlock was entitled to disclosure of the existence of the high-low agreement so it knew the true posture of the case. Had the agreement been disclosed, Garlock could have adjusted its trial strategy accordingly and evaluated the risks of going to trial with the knowledge that plaintiffs had an added incentive of making Garlock the target defendant.

Nondisclosure also deprived Garlock of the opportunity to, among other things, seek appropriate procedural and evidentiary rulings from the trial court and argue the significance of the high-low agreement to the jury. For instance, Garlock may have conducted its jury selection in a different manner, argued that it should not have been required to share peremptory challenges with Niagara, or brought in limine motions concerning the admissibility of the agreement and to what extent, if any, Garlock would be permitted to cross-examine witnesses concerning the contents of the agreement. Instead, Garlock was compelled to proceed blindly to trial without any meaningful opportunity to defend itself from the deleterious effects that the secret agreement may have had on Garlock's defense.

To ensure that all parties to a litigation are treated fairly, we hold that whenever a plaintiff and a defendant enter into a high-low agreement in a multi-defendant action which requires the agreeing defendant to remain a party to the litigation, the

parties must disclose the existence of that agreement and its terms to the court and the nonagreeing defendant(s). This result strikes a proper balance between this State's public policy of encouraging the expeditious settlement of claims, and the need to ensure that all parties to a litigation are apprised of the true posture of the litigation so they may tailor their strategy accordingly. Disclosure provides a nonagreeing defendant a meaningful opportunity to place on the record how it intends to use the agreement at trial, if at all, and affords the trial court an opportunity to weigh the interests of all the parties in considering the extent to which an agreement may be utilized in that forum. Of course, the determinations as to what effect, if any, the existence of the agreement will have at trial, including whether such an agreement should be disclosed to the jury, are matters that lie within the sound discretion of the trial court.

Because Garlock is entitled to a new trial, we do not address Garlock's remaining arguments.

Accordingly, the order of the Appellate Division should be reversed, with costs, and a new trial ordered.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, READ, SMITH and JONES concur.

Order reversed, etc.